584 So.2d 55 (1991)
ASPHALT PAVERS, INC., John Carlo Florida, Inc., Columbia Paving, Inc., Couch Construction Company, Inc., General Asphalt Company, Inc., Hardrives of Delray, Inc., Wiley N. Jackson Company, Pan American Construction Company, Pavex Corporation, Suncoast Paving, Inc., Basic Asphalt & Construction Corp., Duval Asphalt Products, Inc., Florida Asphalt Paving Company, Weekley Asphalt Paving, Inc., the Brewer Company of Florida, Inc., Gator Asphalt Company, Inc., Dickerson Florida, Inc., Okaloosa Asphalt Enterprises, Inc., Orlando Paving Company, and Adams Construction Company,
v.
DEPARTMENT OF REVENUE and The Office of The Comptroller, State of Florida, Appellees.
No. 89-2126.
District Court of Appeal of Florida, First District.
July 18, 1991.
F. Alan Cummings, Bruce Leinback, and Mary M. Piccard of Cummings, Lawrence & Vezina, P.A., Tallahassee, for appellants.
Robert A. Butterworth, Atty. Gen., Joseph C. Millichamp, III, Jeffrey M. Dikman and Eric J. Taylor, Asst. Attys. Gen., for appellees.
NIMMONS, Judge.
Appellants brought an action in the Leon County Circuit Court seeking a declaratory judgment that "liquid asphalt" purchased by them to make "hot mix" qualified for exemption from sales and use taxes under Chapter 212, Florida Statutes. Appellants *56 are paving contractors who install paving known as "hot mix" or "asphaltic concrete" on roads, highways, and other surfaces. Appellants regularly purchase large quantities of liquid asphalt for use in industrial processing. They contend that the sale and use of liquid asphalt from 1983 to 1986 was exempt from taxation and that the Department of Revenue ("Department") wrongfully collected or assessed taxes during this period. Appellants, by their action in circuit court, sought a declaration that they were improperly assessed and an order requiring a refund of the taxes erroneously collected. Appellants appeal from the trial court's final judgment holding that the appellants were not entitled to the claimed tax exemption. We affirm.
The exemption which is the subject of this litigation was originally enacted in 1978 by Chapter 78-299, section one, Laws of Florida, and appeared in the 1978 Supplement of the Florida Statutes as Section 212.08(7)(o), which reads as follows:
(o) "Boiler" fuels.  Purchases of natural gas, residual oil, coal, or wood, wood residues, or wood bark used in an industrial manufacturing, processing, compounding, or production process at a fixed location in this state shall be exempt from the taxes imposed by this chapter. This exemption shall not apply to the use of boiler fuels used by any firm subject to regulation by the Division of Hotels and Restaurants of the Department of Business Regulation.
That statute remained unchanged until 1980 when it was amended by Chapter 80-163, section one, Laws of Florida, by adding several products to those exempted by the statute. In its amended form, the statute appeared in the 1980 Supplement of Florida Statutes as follows:
(o) "Boiler" fuels.  Purchases of natural gas, residual oil, recycled oil, waste oil, solid waste material for use as a fuel, coal, or wood, wood residues, or wood bark used in an industrial manufacturing, processing, compounding, or production process at a fixed location in this state shall be exempt from the taxes imposed by this chapter. This exemption shall not apply to the use of boiler fuels used by any firm subject to regulation by the Division of Hotels and Restaurants of the Department of Business Regulation.
The statute remained unchanged throughout the period relevant to the instant case, 1983 until 1986.
Although the trial court held that liquid asphalt was a "residual oil," the court held that the legislature did not intend, via Section 212.08(7)(o), to exempt residual oil that is liquid asphalt, but rather only the purchase of certain boiler fuels actually used and burned as fuel. Based upon the evidence presented, the court found that liquid asphalt is primarily used in making "hot mix" and not as a fuel.[1] Accordingly, the court held that the Department's rule, Florida Administrative Rule 12A-1.059(10)[2], defining residual oil in terms of *57 oil used as fuels, is entirely consistent with Section 212.08(7)(o).
In order to properly resolve this case, we must determine the legislative intent with respect to the 1980 version of the "Boiler Fuel" exemption statute, the above quoted version as it existed after the Chapter 80-163 amendment. Contrary to appellant's assertions, the plain language of the statute is ambiguous as to whether liquid asphalt is a substance which the legislature intended to exempt from taxes. In resolving this ambiguity, it should first be recognized that an exemption clause in a tax statute is to be strictly construed against the person claiming the exemption. Straughn v. Camp, 293 So.2d 689, 695 (Fla. 1974), appeal dismissed 419 U.S. 891, 95 S.Ct. 168, 42 L.Ed.2d 135 (1974); Wanda Marine Corp. v. State, Department of Revenue, 305 So.2d 65, 69 (Fla. 1st DCA 1974).
It is appropriate, as the trial court did, to examine the legislative history of the statute. As the trial court found, legislative staff analyses are admissible as an aid in ascertaining legislative intent. Ellsworth v. Insurance Company of North America, 508 So.2d 395 (Fla. 1st DCA 1987). The 1980 staff analysis of HB 1506,[3] prepared by the Senate Select Committee on Energy, indicates that the legislature intended the boiler fuel exemption to provide incentives for energy efficiency rather than to promote economic expansion of certain industries. The analysis also indicates that the materials listed in the statute are to be exempted only if they are burned as fuel. The analysis characterized the 1980 changes as "expanding" the boiler fuel exemption to provide an "economic incentive" for manufacturing industries to "burn recycled or waste oil and solid waste materials in boilers." Thus, as recognized by the trial judge, the staff analysis is evidence that the phrase after solid waste, "for use as a fuel," was not exclusively for solid waste but rather was a repetitive clarification that the materials listed were to be burned.
It appears that the legislature has always intended to restrict the exemption to substances that are at least ordinarily used as fuels. This intention was expressed as early as the original 1978 session law (Chapter 78-299) by use of the phrase "`Boiler' Fuels" for the subsection heading[4] and by use of the same phrase in the title of Chapter 78-299. The title of an act may, of course, be considered in ascertaining legislative intent. State v. Webb, 398 So.2d 820 (Fla. 1981). In 1980, the phrase "for use as a fuel" was added.
In 1986, the legislature resolved any ambiguity by providing that "boiler fuels" must be burned as a fuel in order to qualify for the exemption. This amendment was articulated in Chapter 86-152, section 74, Laws of Florida.
We realize that it is a recognized principle of statutory construction that when the legislature amends a statute by omitting or including words, it is to be presumed that the legislature intended the statute to have a different meaning than that accorded it before the amendment.[5] *58 Capella v. City of Gainesville, 377 So.2d 658 (Fla. 1979). However, a mere change in the language of a statute does not necessarily indicate an intent to change the law, because the intent may be to clarify what was doubtful and to safeguard misapprehension as to existing law. State ex rel. Szabo Food Services, Inc. of North Carolina v. Dickinson, 286 So.2d 529 (Fla. 1973). We have reached the conclusion that the 1986 amendment was a mere clarification. This conclusion is bolstered by the statement made by Senator Crawford, the legislative sponsor of the 1986 amendment. The statement of a sponsoring legislator is admissible to clarify ambiguity in legislative intention. Lloyd v. Farkash, 476 So.2d 305 (Fla. 5th DCA 1985). As stated by Senator Crawford:
This amendment clarifies the tax area dealing with fuels for boilers. It basically says that while certain fuels are exempt, they have to be intended to be used as fuel and not just simply something that could be used. It has been intended to be used and it tightens up that exemption. (e.s.)
We also note that the Department's Rule 12A-1.059(10) was amended in 1980 in such a way that the Rule's definition of residual oil excluded liquid asphalt. The amended Rule is reproduced above at footnote 2. Several legislative sessions ensued prior to the above referred 1986 clarifying statutory amendment without any legislative action taking issue with the agency's interpretation of the statutory meaning of residual oil. This bolsters the conclusion reached by the trial court concerning the proper meaning of residual oil as used in the statute. See Kirk v. Western Contracting Corporation, 216 So.2d 503 (Fla. 1st DCA 1969).
On April 21, 1986, the Department issued a technical assistance advisement letter (TAA), under the authority of Section 213.22, Florida Statutes (1985), wherein the Department advised the Asphalt Contractors Association of Florida, Inc. (not a party to this litigation) that the subject exemption statute, as it existed prior to the 1986 amendment, did not require that any of the items listed, except solid waste material, be burned or used as a fuel in order to qualify for the tax exemption provided by the statute.[6] Significantly, the TAA was issued a year after the last tax year in question and cannot therefore be said to have been relied upon by appellants.
We have considered the remaining arguments asserted by appellants and find them to be without merit.
AFFIRMED.
SMITH, J., concurs.
ALLEN, J., specially concurs with opinion.
ALLEN, Judge, specially concurring.
I agree that the trial court was correct in its determination that the appellants were not entitled to the exemption provided by Section 212.08(7)(o), Florida Statutes (Supp. 1980). As indicated by the majority, the statute is ambiguous as to whether liquid asphalt is a substance which the legislature intended to exempt. I would resolve this ambiguity simply by reference to Florida Administrative Code Rule 12A-1.059(10), and the principle that the exemption clause in a tax statute is to be strictly construed against the person claiming the exemption.
NOTES
[1] The evidence showed that while liquid asphalt will burn, it is custom made for the paving business and is very cost inefficient to burn.
[2] Rule 12A-1.059(10) provides:

(10) "Boiler" fuels  Effective January 1, 1979, purchases of natural gas, residual oil, coal or wood, wood residues or wood bark used in an industrial manufacturing, processing, compounding, or production process at a fixed location in this state shall be exempt from the taxes imposed by this chapter; provided, however, this exemption shall not apply to such fuels used by any firm subject to regulation by the Division of Hotels and Restaurants of the Department of Business Regulation. Effective July 1, 1980, the purchases of recycled oil, waste oil and solid waste materials as defined in Section 403.703(9), F.S., for use as a fuel shall also be exempt from the taxes imposed by this chapter, subject to the above provisions. For the purpose of this exemption, the term "residual oil" shall mean ASTM Grades No. 5 and No. 6, heavy diesel and bunker C. Purchase invoices must indicate the type of residual oil purchased. This exemption shall NOT apply to any type of liquefied petroleum gases, naphtha, kerosene or distillate fuel oil, including but not limited to diesel fuels, No. 1 and No. 2 heating oils and No. 4 fuel oil. The term "fixed location" shall mean being permanently affixed to one location or plant site, or any portable plant which may be set up for a period of not less than six months in a stationary manner so as to perform the same industrial manufacturing, processing, compounding, or production process that could be performed at a permanent location or plant site. This exemption shall not be allowed, however, unless the purchaser furnishes the seller a certificate stating that the fuel is used in an industrial manufacturing, processing, compounding, or production process.
[3] House Bill 1506 was enacted and became Chapter 80-163, Laws of Florida.
[4] See Section 212.08(7)(o), Florida Statutes (1978 Supp.).
[5] The 1986 amendment is reflected in the 1986 Supplement to Florida Statutes and is reproduced as follows (the subsection was changed to "m"):

(m) Boiler fuels. When purchased for use as a combustible fuel, purchases of natural gas, residual oil, recycled oil, waste oil, solid waste material, coal, sulfur, wood, wood residues or wood bark used in an industrial manufacturing, processing, compounding, or production process at a fixed location in this state are exempt from the taxes imposed by this chapter; however, such exemption shall not be allowed unless the purchaser signs a certificate stating that the fuel to be exempted is for the exclusive use designated herein. This exemption does not apply to the use of boiler fuels that are not used in manufacturing, processing, compounding, or producing items of tangible personal property for sale, or to the use of boiler fuels used by any firm subject to regulation by the Division of Hotels and Restaurants of the Department of Business Regulation.
[6] This TAA was apparently predicated upon a Tenth Circuit decision in W.R. Grace and Company v. Florida Department of Revenue, Case No. 83-629, which was per curiam affirmed on October 23, 1985, by the Second District Court of Appeal, 478 So.2d 58. We are, of course, not bound by a decision without opinion of another appellate court. Department of Legal Affairs v. District Court of Appeal, 434 So.2d 310 (Fla. 1983). Nor was the "use as a fuel" issue precluded by the doctrine of collateral estoppel. Collateral estoppel only bars identical parties from relitigating identical issues previously decided in a court of competent jurisdiction. Appellants were not parties to the proceeding in Grace. Under Florida law, unlike federal law, there must be a complete identity of parties for the doctrine of collateral estoppel to apply. Trucking Employees of North Jersey Welfare Fund, Inc. v. Romano, 450 So.2d 843, 845 (Fla. 1984).