Ms. Julie Gallagher General Counsel Agency for Health Care Administration 2727 Mahan Drive, Mail Stop #3 Tallahassee, Florida 32308
Dear Ms. Gallagher:
You ask substantially the following questions:
1. If postage and sales tax are added to copying charges, are such sums added to the maximum per copy charge specified in section395.3025, Florida Statutes, or are they included within the maximum charge?
2. Are hospitals required to add sales tax to copies of patient records provided pursuant to section 395.3025, Florida Statutes?
In sum:
1. If postage and sales tax are added to copying charges, such sums are in addition to the per copy charge specified in section395.3025(1), Florida Statutes.
2. Licensed facilities are not exercising the privilege of engaging in business when they are required to provide patient records to patients for a statutorily prescribed fee. Therefore, sales tax need not be imposed for providing copies of patient records pursuant to section 395.3025(1), Florida Statutes. However, in light of the language of section 395.3025(1), legislative clarification is suggested.
Question One
Section 395.3025(1), Florida Statutes, provides:
"(1) Any licensed facility shall, upon written request, and only after discharge of the patient, furnish, in a timely manner, without delays for legal review, to any person admitted therein for care and treatment or treated thereat, or to any such person's guardian, curator, or personal representative, or in the absence of one of those persons, to the next of kin of a decedent or the parent of a minor, or to anyone designated by such person in writing, a true and correct copy of all patient records, including X rays, and insurance information concerning such person, which records are in the possession of the licensed facility, provided the person requesting such records agrees to pay a charge. Theexclusive charge for copies of patient records may include salestax and actual postage, and, except for nonpaper records which are subject to a charge not to exceed $2 as provided in s.28.24(9)(c), may not exceed $1 per page, as provided in s.28.24(8)(a). A fee of up to $1 may be charged for each year of records requested. These charges shall apply to all records furnished, whether directly from the facility or from a copy service providing these services on behalf of the facility. . . ." (e.s.)
The language emphasized above was originally adopted in 1992.[1]
The medical records statute itself appears to have originated as section 395.202, Florida Statutes (1978 Supplement). As originally enacted, the statute provided in part:
"Any licensed hospital shall, upon request, and only after discharge of the patient, furnish to any person admitted therein for care and treatment or treated thereat, or such person's guardian, curator, personal representative, or anyone designated by such person in writing, a true and correct copy of all records in the possession of the hospital, except progress notes and consultation report sections of a psychiatric nature concerning the care and treatment performed therein by the hospital, provided the person requesting such records agrees to pay a reasonable charge for the copying of said records. . . ."
In 1982, the medical records statute was renumbered as section 395.017, Florida Statutes.[2] This statute, which was due to sunset in 1992, contained slightly different language concerning access to patient records and added provisions for the privileged and confidential status of medical records. Through 1987, the statute continued to limit fees for copying medical records by requiring that the copying charges be reasonable.
In 1988, the Legislature began setting maximum fees. As amended, section 395.017, Florida Statutes (1988 Supplement), provided:
"Any licensed facility shall, upon request, . . . furnish to any person admitted therein for care and treatment or treated thereat, . . . a true and correct copy of all patient records, including X rays, concerning such person, which records are in the possession of the licensed facility, . . . provided the person requesting such records agrees to pay a charge. The charge, except for X rays, may not exceed the fee charged per page for copying recordsby the clerk of the county court of the county in which thelicensed facility is located. . . ." (e.s.)
Thus, the fees charged by the medical facilities for patient records, except X-rays, were capped at an amount consistent with the fees charged by the county clerk's office.
In 1992, the Legislature substantially revised Chapter 395, Florida Statutes, and, as a part of the revision, the medical records statute was renumbered as section 395.3025, Florida Statutes. As amended, the statute provides an "exclusive" copying charge and allows for the assessment of charges for sales tax and actual postage as well as up to a $1 fee for each year of records requested. In addition, the 1992 amendment tied the copying fee to the charges of the circuit court clerks, rather than the county clerks, and made the fee limitation applicable not only to licensed medical facilities in possession of the records but also to copying services. The statute no longer explicitly exempted X-rays from the charge limitation, but utilized the term "nonpaper" for the first time in setting a fee.
According to the bill analysis provided to the Legislature by the House Committee on Health Care, the 1992 amendments involved a comprehensive rewrite of Chapter 395, Florida Statutes, intended to eliminate the lack of continuity and purpose that had developed in the chapter through years of piecemeal amendments.[3] In giving an overview of the new changes, the staff analysis states:
"[A] more uniform approach to patient record charges should be realized by establishing copying fees which are consistent with the fees administered by the Clerk of the Circuit Court and by establishing a charge for each year of records that is requested to be searched."[4]
With respect to the amendment of section 395.3025(1), Florida Statutes, the staff analysis provides:
"Section 32. Renumbers s. 395.017, F.S., related to patient and personnel records, as s. 395.3025, F.S., to require a written request prior to the release of any patient records. Patientrecords charges are revised to reflect a copying fee consistentwith the fees affixed by the Clerk of the Circuit Court regardingpaper and non-paper documents, and may include a charge for each year that is requested to be searched and sales tax and postage. A patient whose records are copied or searched for the purpose of continuing to receive medical care is not required to pay such charges."[5] (e.s.)
The staff analysis reflects an intent that the charges for patient records pursuant to section 395.3025, Florida Statutes, include a copying charge for paper and nonpaper documents consistent with the fees imposed by the clerk of the circuit court and may include a charge for sales tax and postage. The copying charge, i.e., a charge not to exceed $2 for nonpaper and $1 for paper copies, would be separate and distinct from any charge for postage and sales tax. Such a conclusion appears to be consistent with the expressed legislative intent that the fees be consistent with those imposed by the clerk of the circuit court. Such charges imposed by the clerk pursuant to sections 28.24(8)(a) and (9)(c), Florida Statutes, do not reflect a charge for postage.[6]
Accordingly, I am of the view that if postage and sales tax are added, such sums are in addition to the per copy charge specified in section 395.3025, Florida Statutes, for paper and nonpaper copies.
Question Two
As noted in Question One, section 395.3025(1), Florida Statutes, provides in part:
"The exclusive charge for copies of patient records may include sales tax and actual postage, and, except for nonpaper records which are subject to a charge not to exceed $2 as provided in s.28.24(9)(c), may not exceed $1 per page, as provided in s.28.24(8)(a). A fee of up to $1 may be charged for each year of records requested."
Thus, the statute recognizes that sales tax may be collected. In determining whether imposition of such a tax is warranted, however, an examination of the state's tax laws is necessary.
Section 212.05, Florida Statutes, provides in part:
"Sales, storage, use tax. — It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, including the business of making mail order sales, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in this state any item or article of tangible personal property as defined herein and who leases or rents such property within the state."
The word "person" is defined to include both private and public entities.[7]
This office has previously stated that the sales tax imposed under Chapter 212, Florida Statutes, "is not a tax against persons or property, but is an excise tax levied upon business transactions for the privilege of engaging in a particular occupation or business, although it is computed upon the sales prices of the commodity or upon the price charged for the services rendered."[8]
The term "[b]usiness" as used in Chapter 212 means:
"any activity engaged in by any person, or caused to be engaged in by him or her, with the object of private or public gain, benefit, or advantage, either direct or indirect. . . . [T]he term "business" shall not be construed in this chapter to include occasional or isolated sales or transactions involving tangible personal property or services by a person who does not hold himself out as engaged in business. . . . Any tax on such sales, charges, rentals, admissions, or other transactions made subject to the tax imposed by this chapter shall be collected by the state, county, municipality, any political subdivision, agency, bureau, or department, or other state or local governmental instrumentality in the same manner as other dealers, unless specifically exempted by this chapter."[9]
In Attorney General Opinion 86-83, this office considered whether providing a public record under Chapter 119, Florida Statutes, is subject to the state sales tax. This office reasoned that while it was clear that a copy of a public record constitutes "tangible personal property,"[10] it did not appear that a public agency, in providing a copy of a public record as required by statute, is engaging in an activity with the object of private or public gain, benefit, or advantage.
This office has recognized that a number of activities undertaken by public entities come within the taxation provisions of Chapter 212, Florida Statutes.[11] In those cases, the rentals and charges were made with the object of some gain, benefit, or advantage inuring to the public agency. However, a public agency, in furnishing a copy of a public record upon payment of the fee prescribed by law or, if no fee is prescribed, upon payment of the actual costs of duplication, does not appear to be engaging in the business of selling tangible personal property at retail. The legislative intent in requiring custodians of public records to furnish copies upon payment of statutorily set fees, or if none, upon payment of actual cost, is not to establish a type of business with the object of private or public gain, benefit, or advantage.
Moreover, this office concluded that the imposition of the costs for duplicating a public record were not for purposes of securing an agency business gain within the contemplation of Chapter 212, Florida Statutes, but rather were merely intended for the public agency to cover the costs involved in furnishing copies of public records.
Thus, in keeping with the rule of statutory construction that tax laws are to be construed strongly in favor of taxpayers and against the government, with any ambiguity or doubts to be resolved in favor of the taxpayers,[12] this office concluded that the sales tax imposed pursuant to section 212.05, Florida Statutes, is not applicable to fees charged for providing copies of public records under Chapter 119, Florida Statutes.[13]
Attorney General Opinion 86-83 considered the application of the sales tax when a statute provided for the release of public records for a statutorily prescribed fee. Section 395.3025(1), Florida Statutes, provides for the release of patient records held by "[l]icensed facilities," i.e., hospitals, ambulatory surgical centers, or mobile surgical facilities licensed in accordance with Chapter 395, Florida Statutes,[14] upon payment of a statutorily prescribed fee. As was the case in Attorney General Opinion 86-83, the charges imposed for providing such records do not appear to be made with the object of some gain, benefit, or advantage inuring to the public agency, nor do the facilities appear to be engaging in the business of selling tangible personal property at retail. Rather these licensed facilities, like the public agencies in Attorney General Opinion 86-83, are complying with a statutory mandate to furnish a copy of a record upon payment of the fee prescribed by law. The fee imposed reflects a copying charge consistent with the fees imposed by the clerk of the circuit court regarding paper and nonpaper documents.[15]
Accordingly, I am of the opinion that licensed facilities are not exercising the privilege of engaging in business when they are required to provide patient records to patients for a statutorily prescribed fee, and therefore, sales tax is not due.[16] However, in light of the language of section 395.3025(1), Florida Statutes, referring to the imposition of the sales tax, legislative clarification of this issue is suggested.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, Ch. 92-289, Laws of Fla.
[2] See, Ch. 82-182, Laws of Fla.
[3] House of Representatives Committee on Health Care Final Bill Analysis Economic Impact Statement on HB 367-H (passed by the Legislature as Ch. 92-289, Laws of Florida), dated June 29, 1992 (hereafter staff analysis). And see, State, Dept. of EnvironmentalRegulation v. SCM Glidco Organics Corp., 606 So.2d 722 (Fla. 1st DCA 1992); Asphalt Pavers, Inc. v. Department of Revenue,584 So.2d 55 (Fla. 1st DCA 1991) (legislative staff analysis are admissible as aid in ascertaining legislative intent).
[4] See, staff analysis, supra.
[5] Id.
[6] Cf., Yanke v. State, 588 So.2d 4 (Fla. 2d DCA 1991) (petition seeking records from state attorney's files and records pursuant to Public Records Act was not entitled to records without copying or postage charges).
[7] See, s. 212.02(12), Fla. Stat., defining "Person" for purposes of Ch. 212, Fla. Stat., to include "any individual, firm, copartnership, joint adventure, association, corporation, estate, trust, business trust, receiver, syndicate, or other group or combination acting as a unit and also includes any political subdivision, municipality, state agency, bureau, or department and includes the plural as well as the singular number."
[8] Attorney General Opinion 75-278 (1975). Cf. Ryder TruckRental, Inc. v. Bryant, 170 So.2d 822 (Fla. 1964) (a "sale" or "use tax" is tax on privilege of engaging in particular business or occupation). And see, 84 C.J.S. Taxation s. 122 (Legislature has the right and discretion to determine the subjects or objects on which excise taxes shall be laid, and it may tax such acts, privileges, and occupations, as it sees fit).
[9] Section 212.02(2), Fla. Stat. Cf., Richard Bertram Co. v.Green, 132 So.2d 24 (Fla. 3d DCA 1961); Green v. Pederson,99 So.2d 292 (Fla. 1957), regarding occasional or isolated sales.
[10] See, s. 212.02(19), Fla. Stat., defining "[t]angible personal property" to mean and include "personal property which may be seen, weighed, measured, or touched or is in any manner perceptible to the senses. . . ."
[11] See, e.g., Ops. Att'y Gen. Fla. 75-267 (1975) (City of Jacksonville Department of Housing and Urban Renewal Development is liable for sales taxes due on rentals received from the leasing of commercial property acquired through urban renewal and leased temporarily until disposed of); 75-278 (1975) (transient rentals tax applicable to dockage charges imposed by the Port of Palm Beach District); 80-47 (1980) (for the purposes of Ch. 212, Fla. Stat., generally, a statutorily created health facility authority is a "person" operating a business which engages in a taxable privilege under s. 212.031(1), Fla. Stat., when it rents real property in the state).
[12] See, e.g., Maas Brothers, Inc. v. Dickinson, 195 So.2d 193
(Fla. 1967); Culbreath v. Reid, 65 So.2d 556 (Fla. 1953).
[13] And see, Op. Att'y Gen. Fla. 74-233 (1974) (sales of certified copies of public records not subject to sales tax); seealso, Rule 12A-1.041(8)(a), Fla.Admin.C., stating:
"(8)(a) The fee prescribed by law, or the actual cost of duplication, for providing copies of public records by public officers or public employees under Chapter 119, F.S., is exempt from sales tax.
* * *
(c) The charge for copying documents and other papers which are not public records and which can be copied by a dealer engaged in such business represents the sale of tangible personal property and is taxable."
[14] See, s. 395.002(17), Fla. Stat.
[15] See, House of Representatives Committee on Health Care Final Bill Analysis Economic Impact Statement on HB 367-H (as passed by the Legislature as Ch. 92-289, Laws of Florida), dated June 29, 1992.
[16] This office has contacted the General Counsel's Office for the Department of Revenue and has been advised that it concurs in such a determination.