882 So.2d 1027 (2004)
MILLENNIUM DIAGNOSTIC IMAGING CENTER, INC., Appellant,
v.
SECURITY NATIONAL INSURANCE COMPANY, Appellee.
No. 3D03-960.
District Court of Appeal of Florida, Third District.
August 11, 2004.
Rehearing Denied October 6, 2004.
*1028 Lidsky, Vaccaro & Montes, P.A., and Carlos Lidsky, and Leonardo Bueno; Pastor, Montes & Naveo, P.A. and Carlos Pastor, for appellant.
Barranco, Kircher & Vogelsang, P.A. and Beth T. Vogelsang, for appellee.
Before COPE, GERSTEN, and GREEN, JJ.
GREEN, J.
Millennium Diagnostic Imaging Center, Inc. ("Millennium") appeals from an order dismissing its class action suit against Security National Insurance Company ("Security National"). The issue here involves the interpretation of a 2001 amendment to Florida's Motor Vehicle No-Fault Law which established a fee schedule for personal injury protection ("PIP") benefits payable to magnetic resonance imaging ("MRI") providers.
Millennium provided MRI services on February 22, 2002 to Pedro Perez, an automobile accident victim insured by Security National. Perez assigned his PIP medical benefits to Millennium. A claim for PIP benefits under Security National's policy was submitted by Millennium totaling $2,178.00. Security National paid Millennium $903.68 for the services. Millennium claimed that pursuant to section 627.736(5)(b)5, Fla. Stat. (2001), it should have been paid $987.21 and therefore it had been underpaid by $83.53.
Thereafter, Millennium filed a putative class action against Security National claiming that an MRI provider's charges, according to section 627.736(5)(b) 5, should be based on the highest of the three available ("participating", "nonparticipating" or "limiting charge") Medicare Part B rate schedules, the "limiting charge" schedule. Security National claimed that the statutory scheme required a payment of eighty-percent (80%) of the "participating" fee schedule, as opposed to the "limiting charge," and moved to dismiss the complaint because it had paid Millennium the amount it was due under the "participating" fee schedule. The trial court agreed and dismissed Millennium's complaint.
Millennium appeals, claiming that the plain language of the statute provides that the Medicare Plan B "limiting charge" is an "allowable" amount upon which MRI service charges may be based. We disagree and affirm.
In 2001, the Florida Legislature enacted a fee schedule regulating, among other things, the amount MRI providers could charge PIP insurers and their insureds. See § 627.736(5)(b)5, Fla. Stat. (2001). This schedule provided that:
Effective upon this act becoming a law and before November 1, 2001, allowable *1029 amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services shall not exceed 200 percent of the allowable amount under Medicare Part B for year 2001, for the area in which the treatment was rendered. Beginning November 1, 2001, allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services shall not exceed 175 percent of the allowable amount under Medicare Part B for year 2001, for the area in which the treatment was rendered, adjusted annually by an additional amount equal to the medical Consumer Price Index for Florida, except that allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services provided in facilities accredited by the American College of Radiology or the Joint Commission on Accreditation of Healthcare Organizations shall not exceed 200 percent of the allowable amount under Medicare Part B for year 2001, for the area in which the treatment was rendered, adjusted annually by an additional amount equal to the medical Consumer Price Index for Florida. This paragraph does not apply to charges for magnetic resonance imaging services and nerve conduction testing for inpatients and emergency services and care as defined in chapter 395 rendered by facilities licensed under chapter 395.
Soon after the trial court entered its order in this case, the legislature amended section 627.736(5)(b)5 to explicitly provide that "the participating physician fee schedule" controls the amounts payable to MRI service providers.[1]See Ch. 03-411, § 8, at 3833, Laws of Fla. Given the cavalcade of *1030 litigation regarding this issue,[2] we believe that the amendment was enacted as a clarification of the legislature's intent on what an "allowable amount" would be. See Lowry v. Parole & Prob. Comm'n, 473 So.2d 1248, 1250 (Fla.1985) ("When, as occurred here, an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof.").
This intention to clarify is further illustrated by the legislative staff analyses to the amendment. See Asphalt Pavers, Inc. v. Dep't of Revenue, 584 So.2d 55, 57 (Fla. 1st DCA 1991) (holding that legislative staff analyses are admissible as an aid in ascertaining legislative intent). The 2003 amendment began as Committee Substitute for Senate Bill 32-A (2003). The Senate Staff Analysis and Economic Impact Statement dated May 15, 2003 provides that:
The bill clarifies that the allowable amounts for medically necessary nerve conduction tests, under specified conditions, will be under the "participating physician fee schedule" of the Medicare Part B fee schedule and adjusted annually on August 1 to reflect the prior calendar year's changes in the Medical Care Item of the Consumer Price Index (CPI) for All Urban Consumers in the South Region as determined by the Bureau of Labor Statistics. The CPI provisions also pertain to MRI services.
Senate Staff Analysis and Economic Impact Statement, CS/SB 32-A, § 8 (2003). This analysis shows that the purpose of the amendment was to clarify that the participating fee schedule was the proper fee schedule under the original statute. See Gay v. Canada Dry Bottling Co., 59 So.2d 788, 790 (Fla.1952) (holding that the interpretation of a statute by a legislative department goes far to remove doubt about the meaning of the law).
Because the 2003 amendment to section 627.736(5)(b)5 confirms that the trial court's interpretation of the 2001 statute was correct, we affirm.
NOTES
[1] The statute now reads:

Effective upon this act becoming a law and before November 1, 2001, allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services shall not exceed 200 percent of the allowable amount under Medicare Part B for year 2001, for the area in which the treatment was rendered. Beginning November 1, 2001, allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services shall not exceed 175 percent of the allowable amount under the participating physician fee schedule of Medicare Part B for year 2001, for the area in which the treatment was rendered, adjusted annually on August 1 to reflect the prior calendar year's changes in the annual Medical Care Item of the Consumer Price Index for All Urban Consumers in the South Region as determined by the Bureau of Labor Statistics of the United States Department of Labor for the 12-month period ending June 30 of that year, except that allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services provided in facilities accredited by the Accreditation Association for Ambulatory Health Care, the American College of Radiology, or the Joint Commission on Accreditation of Healthcare Organizations shall not exceed 200 percent of the allowable amount under the participating physician fee schedule of Medicare Part B for year 2001, for the area in which the treatment was rendered, adjusted annually on August 1 to reflect the prior calendar year's changes in the annual Medical Care Item of the Consumer Price Index for All Urban Consumers in the South Region as determined by the Bureau of Labor Statistics of the United States Department of Labor for the 12-month period ending June 30 of that year. This paragraph does not apply to charges for magnetic resonance imaging services and nerve conduction testing for inpatients and emergency services and care as defined in chapter 395 rendered by facilities licensed under chapter 395.
§ 627.736(5)(b)5, Fla. Stat. (2003) (emphasis added).
[2] See, e.g., Advanced Diagnostics Testing v. Allstate Ins. Co., Case No. 3D03-3077; Oakland Park Open MRI, Inc. v. Progressive Express Ins. Co., 11 Fla. L. Weekly Supp. 259 (Fla. 17th Cir.Ct. December 23, 2003); MDC Diagnostics Inc. v. Progressive Express Ins. Co., No.2003-CC-12625-RF (Fla. Palm Beach County Ct. May 14, 2004); Diagnostic Rehab. Servs. v. Progressive Express Ins. Co., 11 Fla. L. Weekly Supp. 647 (Fla. Hernando Co. Ct. April 27, 2004);.