985 So.2d 10 (2008)
PROGRESSIVE AUTO PRO INSURANCE COMPANY and State Farm Mutual Automobile Insurance Company, Appellants,
v.
ONE STOP MEDICAL, INC., and Florida MRI, Inc., a/a/o Jeanmary Phresner, Appellees.
Nos. 4D06-2157, 4D06-2697 to 4D06-2703, 4D06-2705 to 4D06-2708, 4D06-3649.
District Court of Appeal of Florida, Fourth District.
April 16, 2008.
*11 Bruce S. Rogow of Bruce S. Rogow, P.A., Ft. Lauderdale and Maury L. Udell of Beighley & Myrick, P.A., Miami, for appellant Progressive Auto Pro Insurance Co.
Hinda Klein of Conroy, Simberg, Ganon, Abel, Lurvey, Morrow & Schefer, P.A., Hollywood and Fernando L. Roig, Michale A. Rosenberg and Jenna T. Hackman of Roig, Kasperovich, Tutan & Woods, P.A., for appellant State Farm Mutual Automobile Insurance Co.
Robert J. Bradford, Jr. of the Law Office of R.J. Bradford, Jr., P.C., Johnson City, TN, for appellee One Stop Medical, Inc.
Steven Lander of Lander and Goldman, Ft. Lauderdale and Steven M. Goldsmith of Steven M. Goldsmith, P.A., Boca Raton, for appellee Florida MRI, Inc.
TAYLOR, J.
In these consolidated appeals from final summary judgments entered in county court, State Farm Mutual Automobile Insurance Co. (State Farm) and Progressive Auto Pro Insurance Co. (Progressive) challenge the computation of amounts payable on their magnetic resonance imaging *12 (MRI) reimbursements in personal injury protection (PIP) claims. We review the decisions of the county courts on questions they certified as matters of great public importance. These certified questions involve the application of section 627.736(5)(b)5, Florida Statutes (2003), which provides for an adjustment of the allowable amount for MRI fees by an additional amount equal to the Consumer Price Index (CPI).

State Farm
Jeanmary Phresner was injured in an automobile accident. On August 5, 2002, Florida MRI, Inc. performed an MRI on Phresner. Phresner assigned her benefits to Florida MRI, which billed Phresner's PIP carrier, State Farm, directly for the MRI. State Farm did not pay Florida MRI the full amount billed, $1,625.00; it paid only $663.86. State Farm paid pursuant to the Medicare Part B fee schedule, but failed to include any Consumer Price Index (CPI) increase. Florida MRI maintained that it was entitled to a 4.1% CPI adjustment to the Medicare Part B fee schedule, in accordance with Florida Statute § 627.736(5)(b)5.
Florida MRI filed suit against State Farm in county court seeking payment of an additional $27.20, which represented the unpaid CPI adjustment. State Farm moved for summary judgment. Florida MRI filed a cross-motion for summary judgment. The parties stipulated that the only issue was whether Florida MRI was entitled to a CPI adjustment. The trial court granted Florida MRI's motion for final summary judgment, ruling as follows:
The Court finds that based on the plain reading of the statute, the calendar year that the legislature intended to use was that of the preceding year. Here, as to date of service in 2002, the correct amount to use was the consumer price index for the Southeast region for the calendar year 2001. That amount is 3.6%. Accordingly, the Defendant was obligated to enhance its calculations of the 175% of the Medicare Part B Fee Schedule by 3.6%.
State Farm appealed and moved to consolidate this case with eleven other appeals it filed with our court, which are factually indistinguishable and involve the same issue. The trial court certified the following question as a matter of great public importance:
WHEN DOES THE CONSUMER PRICE INDEX ADJUSTMENT AS REFERENCED IN § 627.736(5)(B)(5), FLA. STAT. (2001) TAKE EFFECT, AND HOW IS THE CONSUMER PRICE INDEX ADJUSTMENT TO BE CALCULATED?
Based on the applicable facts and issues determined below, we rephrase the certified question as follows:
IS THE MRI INFLATION ADJUSTMENT CALLED FOR BY § 627.736(5)(B)(5) TO BE MADE FOR THE YEAR 2001?"
We answer that question in the affirmative.
Our standard of review is de novo, because this is an appeal from a summary judgment and, also, because the substantive question posed is a legal question of statutory construction. See Florida Dep't. of Revenue v. New Sea Escape Cruises, Ltd., 894 So.2d 954, 957 (Fla.2005); Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
In 2001, the Florida Legislature enacted a fee schedule to regulate the amount that MRI healthcare providers could charge PIP insurers and their insureds. See § 627.736(5)(b)5, Fla. Stat. (2001). This schedule provided, in pertinent part, that:
Effective upon this act becoming a law and before November 1, 2001, allowable *13 amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services shall not exceed 200 percent of the allowable amount under Medicare Part B for year 2001, for the area in which treatment was rendered. Beginning November 1, 2001, allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services shall not exceed 175 percent of the allowable amount under Medicare Part B for year 2001, for the area in which the treatment was rendered, adjusted annually by an additional amount equal to the medical Consumer Price Index for Florida, except that allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services provided in facilities accredited by the American College of Radiology or the Joint Commission on Accreditation of Healthcare Organizations shall not exceed 200 percent of the allowable amount under Medicare Part B for year 2001, for the area in which the treatment was rendered, adjusted annually by an additional amount equal to the medical Consumer Price Index for Florida.

(emphasis supplied).
After considerable litigation arose concerning the meaning and application of section 627.736(5)(b)5, in 2003 the Legislature amended section 627.736(5)(b)5 to establish the date for the annual CPI adjustment and methodology for its calculation. In pertinent part, the 2003 amendment provides:
Allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services shall not exceed 175 percent of the allowable amount under the participating physician fee schedule of Medicare Part B for year 2001, for the area in which the treatment was rendered, adjusted annually on August 1 to reflect the prior calendar year's changes in the annual Medical Care Item of the Consumer Price Index for All Urban Consumers in the South Region as determined by the Bureau of Labor Statistics of the United States Department of Labor for the 12-month period ending June 30 of that year, except that allowable amounts that may be charge to a personal injury protection insurance insurer and insured for magnetic resonance imaging services provided in facilities accredited by the Accreditation Association for Ambulatory Health Care, the American College of Radiology, or the Joint Commission on Accreditation of Health Care Organizations shall not exceed 200 percent of the allowable amount under the participating physician fee schedule of Medicare Part B for year 2001, for the area in which the treatment was rendered, adjusted annually on August 1 to reflect the prior calendar year's changes in the annual Medical Care Item of the Consumer Price Index for All Urban Consumers in the South Region as determined by the Bureau of Labor Statistics of the United States Department of Labor for the 12-month period ending June 30 of that year.
§ 627.736(5)(b)5, Fla. Stat. (2007) (emphasis supplied).
As the Florida Supreme Court has repeatedly explained:
Legislative intent is the polestar by which a court must be guided in interpreting the provisions of a law. In ascertaining the legislative intent, a court must consider the plain language of the statute, give effect to all statutory provisions, *14 and construe related provisions in harmony with one another.
Florida Dep't of Revenue, 894 So.2d at 957 (quoting Hechtman v. Nations Title Ins. of New York, 840 So.2d 993, 996 (Fla.2003)).
State Farm contends that the trial court erred because the annual CPI adjustment could not be made for MRI services until the 2002 CPI was published by the Bureau of Labor Statistics (BLS) of the Department of Labor. According to State Farm, the CPI for the calendar year 2002 did not exist at the time Florida MRI's bill was due and owing.
Relying, however, on the 2003 amendment to section 627.736(5)(b)5, the county court ruled that Florida MRI was entitled to a CPI adjustment to the Medicare Part B fee schedule for 2001 (base price) for MRI services rendered on August 5, 2002. The court interpreted the 2001 statute to require that the CPI be adjusted annually on August 1 to reflect the prior calendar year's changes as determined by the BLS "for the 12-month period ending June 30 of that year." The court's reliance on the amended statute's date for the annual CPI adjustment was proper. See Millennium Diagnostic Imaging Ctr., Inc. v. Sec. Nat'l. Ins. Co., 882 So.2d 1027, 1030 (Fla. 3d DCA 2004) (construing the 2003 amendment of section 627.726(5) as a clarification of the legislature's original intent); Clearview Imaging, L.L.C. v. State Farm Mut. Auto. Ins. Co., 932 So.2d 423, 426 (Fla. 2d DCA 2006) (adopting Millennium's conclusion that the 2003 amendment is a legislative interpretation of the original law rather than a substantive change).
State Farm further argues that the trial court's interpretation was erroneous because the 2001 inflation was already "built-into" the 2001 Medicare Part B figures. However, as Florida MRI counters, "the base allowable amount, Medicare Part B for the year 2001, is actually published a year earlier on November 1, 2000. See Medicare Program; Revisions to Payment Policies Under the Physicians Fee Schedule for Calendar Year 2001; Final Rules, 65 Federal Register 65376-01, 2000 WL 1624262 (Nov. 1, 2000). Thus, State Farm's assertion that the 2001 Medicare B fee schedule already included an amount for inflation in 2001 is not accurate. We conclude that the county court did not err in finding that Florida MRI was entitled to the 2001 inflation adjustment.

Progressive
This case arose in county court upon a complaint for declaratory relief filed by One Stop Medical, Inc., the MRI provider who took an assignment of benefits from an insured and sought additional payments from Progressive. One Stop Medical, Inc. claimed that it was owed an additional $288.72 based on the 2003 formula for calculating CPI adjustments. It sought a declaratory judgment determining whether the CPI adjustments are annual and cumulative under Florida Statute section 627.736(5)(b)5 and when they commenced. The trial court entered summary final judgment in favor of One Stop Medical, Inc., finding as follows:
The following facts are undisputed: Defendant, PROGRESSIVE AUTO PRO INSURANCE CO., insured Burnitt Johnson under an 80% policy which provided PIP benefits in accordance with Florida Law. Plaintiff performed a Cervical MRI CPT Code 72141 on May 4, 2005 on the insured, Burnitt Johnson resulting from an automobile accident that occurred on April 1st 2005. Defendant, PROGRESSIVE AUTO PRO INSURANCE CO., was given timely notice of the bill for the amount of $1,850.00. On July 14, 2005, Plaintiff demanded payment. Defendant denied any further obligation and instead, asserted that it *15 had already reimbursed the Plaintiff at the maximum allowable amount pursuant to Florida Statute § 627.736(5) in the amount of $827.44 (80% of $1,030.96) plus $9.02 in interest.
Defendant calculated the amount by taking the relevant starting number from the 2001 Medicare Part B fee schedule and making annual adjustments according to the Consumer Price Index for All Urban Consumers in the South Region beginning August 1st 2004, the first "adjustment year" following the amendment in 2003  the year in which the statute was amended to rely on the Consumer Price Index for All Urban Consumers in the South Region. Plaintiff contends that Defendant's calculations incorrectly apply the Consumer Price Index as instructed by Florida Statute § 627.736(5)(b)(5) and incorrectly computes $1,030.95 as the allowable amount a medical provider may collect for an MRI CPT Code 72141 performed on May 4, 2005. Plaintiff argues that the correct application of the statute requires adjustments commencing August 1st 2002 and cumulatively applied through in this case 2004. This realizes $1,115.16 as the allowable amount that a medical provider may charge for the subject MRI performed between August 1st 2004 and July 31st 2005. This Court agrees.
In an amended order, the county court certified the following question of great public importance:
Under Fla. Stat. § 627.736(5)(b)(5)(2004), is the statutory adjustment applicable to the MRI fee schedule annual and cumulative commencing August 1st, 2002 to the date of the subject scan?
We answer the certified question in the affirmative. The trial court correctly concluded that the 2003 amendment to Florida Statute section 627.736(5)(b)5 required applying cumulative and compounding inflation adjustments for 2001, 2002, and succeeding years, so that "the fee schedule amount for the year in question will reflect the combined prior year's increases from 2001 through August 1st of the year in which the MRI scan is performed." We believe this interpretation follows the clear legislative intent in retaining the Medicare Part B 2001 starting point.[1] Contrary to Progressive's position, this construction does not result in an unconstitutional retroactive application of the statute. Rather, it involves application of a statute which became effective October 1, 2003 to an MRI scan performed later in May 2005.[2]
Based on the foregoing, we affirm the judgments entered in all these consolidated cases.
Affirmed.
SHAHOOD, C.J. and LEVIN, STEVEN J., Associate Judge, concur.
NOTES
[1] We note only that the CPI adjustment for each year should compound so that one multiplies the base charge by each year's adjustment. For example, if 2001 had a 5% inflation rate and 2002 a 6% rate, the correct formula for a 2003 MRI would be the base charge x 1.05 x 1.06, and so on, unless or until the legislature resets the base year.
[2] Chapter 2003-411, Laws 2003 § 16(4) provides: "Subsection (5) of section 627.736, Florida Statutes, as amended by this act, shall apply to treatment and services occurring on or after October 1, 2003."