KHOUZAM, Judge.
 

 Allstate Insurance Company, the defendant below, seeks review of a county court order certifying two questions as being of great public importance. The order was entered in conjunction with a final judgment in which the county court awarded Advantage Open MRI, Inc., as assignee of David Wrobel, $52.28 plus interest based on the court’s determination that Allstate underpaid personal injury protection (PIP) benefits for magnetic resonance imaging (MRI) services. Allstate also appeals the final judgment.
 

 Allstate challenges the computation of the amount payable for the MRI. The computation was made by applying an annual consumer price index (CPI) inflation adjustment to the amount payable under this PIP policy. We are asked to resolve whether the computation for PIP benefits payable for an MRI performed during the effective date of section 627.736(5)(b)(5), Florida Statutes (2006), should begin with an inflation adjustment for 2001 and whether the annual inflation adjustment applied for 2001 through 2005 should be based on the CPI adjustment factor for the twelve-month period ending June 30 of each year.
 

 We have jurisdiction to review the certified questions.
 
 See
 
 Fla. R.App. P. 9.030(b)(4)(A). Having exercised our discretionary authority to accept review of the certified questions, we also have the authority to review the final judgment.
 
 See
 
 Fla. R.App. P. 9.160(e)(2), (f)(1). We reverse the final judgment. We rephrase the certified questions framed by the county court as a single question, which we answer in the affirmative.
 

 
 *756
 
 The county court certified the following two questions to be of great public importance:
 

 FOR MRI SCANS PERFORMED AFTER THE EFFECTIVE DATE OF THE 2005 REVISER’S BILL AMENDMENTS TO SECTION 627.7S6(5)(B)(5), WHEN IS THE FIRST CPI ADJUSTMENT REQUIRED?
 

 PRECISELY WHAT CPI ADJUSTMENTS ARE REQUIRED BY FLA. STAT. § 627.736(5)(B)(5) (2006) IN CONNECTION WITH REIMBURSEMENTS FOR MRI SCANS?
 

 We rephrase the certified questions as a single question as follows:
 

 IS THE MRI INFLATION ADJUSTMENT CALLED FOR BY SECTION 627.736(5)(B)(5), FLORIDA STATUTES (2006), TO BE MADE FOR THE YEAR 2001 BEGINNING ON AUGUST 1, 2002, AND ADJUSTED ANNUALLY EACH YEAR THEREAFTER ON AUGUST 1 THROUGH THE YEAR IN WHICH THE MRI IS PERFORMED UTILIZING THE STATUTORILY-REFERENCED CPI THAT REFLECTS THE CHANGES FOR THE PRECEDING 12-MONTH PERIOD ENDING JUNE 30 OF EACH YEAR?
 

 We answer the question in the affirmative.
 

 Mr. Wrobel was injured in an automobile accident. As a result of the accident, he received an MRI from Advantage on July 17, 2006. He assigned to Advantage his benefits under his PIP policy with Allstate. Advantage billed Allstate $1375 for the MRI. Allstate paid Advantage $1307.98 for this scan. Advantage then filed suit in county court seeking monetary damages for the unpaid PIP benefits and declaratory relief regarding the parties’ rights and obligations under section 627.736(5)(b)(5), Florida Statutes (2006).
 

 In determining the underpayment, the county court construed section 627.736(5)(b)(5), Florida Statutes (2003-2006), to determine how to properly calculate the payment that Allstate should have remitted for the MRI. All of the foregoing versions of section 627.736(5)(b)(5) limit the allowable amount to be charged to a PIP insurer for an MRI. Each version, however, provides for an annual upward adjustment to the allowable amount, which is to be based on CPI figures. Advantage maintained that the first CPI adjustment was required as of August 1, 2001, with annual adjustments thereafter (resulting in five CPI adjustments in this case), and that the specific CPI figures to use were to come from the CPI chart for medical care items for all urban consumers in the south region as determined by the Bureau of Labor Statistics of the United States Department of Labor for the twelve-month period ending June 30 of that year.
 

 The county court agreed with Advantage’s interpretation of the statute and determined that it should have been paid $1360.26 (a bit less than the amount originally billed). In the final judgment, the court awarded Advantage $52.28 in monetary damages, i.e., the difference between the amount remitted by Allstate ($1307.98) and the adjusted amount payable to Advantage for this MRI ($1360.26).
 

 The certified question before this court has been answered, for the most part, by the Fourth District in an opinion that was published during the pendency of this appeal after this court accepted review of this matter.
 
 See Progressive Auto Pro Ins. Co. v. One Stop Med., Inc.,
 
 985 So.2d 10 (Fla. 4th DCA 2008). In
 
 Progressive Auto,
 
 a consolidated appeal, the Fourth District addressed certified questions that arose from separate county court cases involving State Farm Mutual Automobile Insurance Company, Progressive Auto Pro Insurance Company, and two different
 
 *757
 
 MRI providers.
 
 Id.
 
 The Fourth District, in
 
 Progressive Auto,
 
 determined that the CPI adjustment to the base amount allowable under section 627.736(5)(b)(5), Florida Statutes (2001-2003), should begin with an annual CPI adjustment for the year 2001 and the first CPI adjustment is to be made as of August 1, 2002.
 
 [1]
 

 Id.
 
 at 14-15. The Fourth District also confirmed that the adjustment should be compounded annually “through August 1st of the year in which the MRI scan is performed.”
 
 Id.
 
 at 15.
 

 Additionally, although the Fourth District did not identify which CPI chart was utilized in determining the adjusted amount due to the MRI providers in
 
 Progressive Auto,
 
 it recognized that the trial court had used a CPI adjustment of 3.6 percent and it concluded that the trial court did not err in finding that the MRI provider was entitled to the 2001 CPI adjustment.
 
 Id.
 
 at 12-14. This adjustment percentage is identical to the adjustment percentage applied in the present case for 2001. And, here this adjustment percentage and the adjustment percentages for each year thereafter were derived from the statutorily-referenced Bureau of Labor Statistics’ chart for the CPI ending on June 30 of each year.
 
 [2]
 

 The county court did not have the benefit of the
 
 Progressive Auto
 
 decision when it entered the final judgment and order in this case. Nonetheless, the county court’s methodology was consistent with that applied in
 
 Progressive Auto
 
 in all but one respect. The county court began its computation by adjusting the base figure as of August 1, 2001, with the CPI factor for the year 2001. In
 
 Progressive Auto,
 
 the Fourth District determined that the first CPI adjustment should begin on August 1, 2002, utilizing the CPI factor for the year 2001.
 
 [3]
 

 The method of computation described in
 
 Progressive Auto
 
 remains the same even after the 2005 reviser’s bill to section 627.736(5)(b)(5). The reviser’s bill provides:
 

 (5) Charges for treatment of injured persons.—
 

 (b)
 

 
 *758
 
 5. Effective-upon this act becoming a law and before November 1, 2001, allowable amounts-that may be charged to a personal injury protection-insurance insurer and — insured for magnetic resonance imaging services-shall not exceed-200 percent of the allowable-amount under Medicare-Part B for-year 2001, for the area in which the treatment was rendered- — Beginning November 1, 2001, Allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services shall not exceed 175 percent of the allowable amount under the participating physician fee schedule of Medicare Part B for year 2001, for the area in which the treatment was rendered, adjusted annually on August 1 to reflect the prior calendar year’s changes in the annual Medical Care Item of the Consumer Price Index for All Urban Consumers in the South Region as determined by the Bureau of Labor Statistics of the United States Department of Labor for the 12-month period ending June 30 of that year, except that allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services provided in facilities accredited by the Accreditation Association for Ambulatory Health Care, the American College of Radiology, or the Joint Commission on Accreditation of Healthcare Organizations shall not exceed 200 percent of the allowable amount under the participating physician fee schedule of Medicare Part B for year 2001, for the area in which the treatment was rendered, adjusted annually on August 1 to reflect the prior calendar year’s changes in the annual Medical Care Item of the Consumer Price Index for All Urban Consumers in the South Region as determined by the Bureau of Labor Statistics of the United States Department of Labor for the 12-month period ending June 30 of that year. This paragraph does not apply to charges for magnetic resonance imaging services and nerve conduction testing for inpatients and emergency services and care as defined in chapter 395 rendered by facilities licensed under chapter 395.
 

 Reviser’s note. — Amended to delete an obsolete provision limiting charges to personal injury insurers and insureds for magnetic resonance imaging to 200 percent of the allowable amount under Medicare Part B until November 1, 2001.
 

 Ch. 2005-2, § 121 at 146-47, Laws of Fla. (eff. July 5, 2005) (emphasis supplied).
 
 [4]
 
 A plain reading of the foregoing reflects that under the version of section 627.736(5)(b)(5) effective July 5, 2005: the first CPI adjustment should be made as of August 1, 2002, for the year 2001; the adjustment should then be made annually on August 1 each year through the year in which the MRI is performed; and the CPI factor should be based on the statutorily-referenced chart for the 12-month period ending June 30 of each year.
 

 We reverse the final judgment and remand for further proceedings consistent with this opinion. We answer the certified question, as reframed, in the affirmative.
 

 Reversed and remanded. Certified question answered.
 

 ALTENBERND and CRENSHAW, JJ., Concur.
 

 [1]
 

 . In
 
 Progressive Auto,
 
 the MRI in State Farm’s case was performed on August 5, 2002, and the MRI in Progressive’s case was performed on May 4, 2005. 985 So.2d at 12, 14.
 

 [2]
 

 . The county court applied CPI adjustments of 3.6% (the factor published by August 1, 2001, for tine 12-month period ending June 30, 2001), plus a second, cumulative CPI adjustment of 4.1% (the factor published by August 1, 2002, for the 12-month period ending June 30, 2002), plus a third, cumulative CPI adjustment of 4.0% (the factor published by August 1, 2003, for the 12-month period ending June 30, 2003), plus a fourth, cumulative CPI adjustment of 4.4% (the factor published by August 1, 2004, for the 12-month period ending June 30, 2004), plus a fifth, cumulative CPI adjustment of 4.0% (the factor published by August 1, 2005, for the 12-month period ending June 30, 2005).
 

 Curiously, in
 
 Altamonte Springs Imaging, L.C. v. State Farm Mutual Automobile Insurance Co.,
 
 12 So.3d 850 (Fla. 3d DCA 2009), the Third District presents a hypothetical example of a computation “as applied by the Fourth District in
 
 Progressive Auto
 
 ” that utilizes, for the first CPI adjustment, a multiplier of 4.0693%.
 
 Id.
 
 at 856. It identifies 4.0693% as the June 30, 2002, adjustment factor.
 
 Id.
 
 Here, unlike in
 
 Altamonte Springs,
 
 no issue was raised concerning the propriety of using the rounded percentage figures for the annual CPI adjustment rather than extending the percentages to four or more decimal places. Indeed, as recognized by the Third District, ”[t]he CPI figures published by the Bureau of Labor Statistics that are to be used in these adjustments are rounded to the nearest tenth.”
 
 Id.
 
 at 855. Furthermore, we do not read
 
 Progressive Auto
 
 as applying the column of the Bureau of Labor Statistics’ chart for June 30, 2002, for the first CPI adjustment.
 

 [3]
 

 .We recognize that this manner of computation will result in one less annual adjustment in this case.
 

 [4]
 

 . We note that section 627.736 was substantially revised effective July 1, 2008. Ch. 2008-220, § 22 at 451-54; ch. 2008-4, § 153 at 2452-54, Laws of Fla. (eff. July 1, 2008).