**ALL FAMILY CLINIC OF DAYTONA BEACH INC., Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INS., CO., Defendant.**

**Case No. 09–60902–CIV.**

United States District Court, S.D. Florida.

Feb. 11, 2010.

Eric Lee, Lee & Amtzis, P.L., Boca Raton, FL, Kimberly P. Simoes, Susan W. Tolbert PL, Daytona Beach, FL, Amy Lane Hurwitz, Carlton Fields, Miami, FL, Cullin Avram O'Brien, Paul Jeffrey Geller, Stuart Andrew Davidson, Coughlin Stoia Geller Rudman & Robbins LLP, Boca Raton, FL, for Plaintiff.

Benjamine Reid, Amy Lane Hurwitz, Carlton Fields, Miami, FL, for Defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment, filed October 15, 2010 (D.E. 22). Plaintiff responded in opposition on November 13, 2010 (D.E. 24), to which Defendant replied on December 4, 2010 (D.E. 32). Also before the Court is Plaintiff's Motion for Summary Judgment, filed October 15, 2010 (D.E. 23). Defendant responded in opposition on November 13, 2010 (D.E. 26), to which Plaintiff replied on December 4, 2010 (D.E. 30). As such, the Motions are now ripe for adjudication.

THE COURT has considered the Motions and the pertinent portions of the record and is otherwise fully advised in the premises.

### Background

At issue in this case is the proper reimbursement for magnetic resonance imaging ("MRI") services under the 2008 amendment to Florida Statute § 627.736. The parties have provided a joint statement of stipulated undisputed facts (D.E. 20–1, the "Facts").

### I. The Parties

Defendant State Farm Mutual Automobile Insurance Co. ("State Farm") is an automobile insurance carrier doing business in the State of Florida and selling insurance products, including No–Fault or Personal Injury Protection ("PIP") coverage. (*Id.* ¶ 2.) Plaintiff All Family Clinic of Daytona Beach, Inc. (the "Clinic") is a MRI service provider who provides MRIs to State Farm's insureds pursuant to assignments of benefits. (*Id.* ¶¶ 1, 3.)

1. It is undisputed that the MRI services at issue in this case were provided in a non-emergency, non-hospital setting and, there-

### II. Statutory Framework

#### A. Florida's No–Fault Statute

Florida's No–Fault Law, Fla. Stat. § 627.736 (the "No–Fault Statute"), requires motor vehicle owners to purchase PIP coverage and is designed to provide various insurance benefits without regard to fault. (*Id.* ¶ 4.) The relevant provision for our purposes here is subsection (5)(a) of the No–Fault Statute, which provides the methodology by which a PIP insurer (such as State Farm) may limit reimbursement for certain services (such as MRI services). (*Id.* ¶ 6.)

In 2008, the Florida Legislature amended subsection (5)(a)(2)(f) and (5)(a)(3) to "clarif[y] that PIP reimbursement for medical services would be based on 200 percent of the allowable amount under the 'participating physicians' schedule of Medicare Part B for 2007." (*Id.* ¶ 7.) Accordingly, with respect to MRI services, Florida's No–Fault Statute now provides that an insurer may limit reimbursement to 80% of "200 percent of the allowable amount under the participating physicians schedule of Medicare Part B." Fla. Stat. § 627.736(5)(a)(2)(f).[1] And subsection (5)(a)(3) of the No–Fault Statute adds that, for purposes of subparagraph (2), "the applicable fee schedule ... under Medicare is the fee schedule"

> in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, *except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.*

fore, fall within the "other medical services" described by subsection (f).

Fla. Stat. § 627.736(5)(a)(3) (emphasis added). In other words, the applicable fee schedule for maximum charges for the current year must be compared with the applicable schedule for 2007, and the insurer must pay the higher of the two.

Finally, subsection (5)(a)(4) provides:

Subparagraph 2. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation. An insurer that applies the allowable payment limitations of subparagraph 2. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider would be entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes.

Fla. Stat. § 627.736(5)(a)(4).

## B.  Federal Law

It is undisputed that the participating physicians schedule for Medicare Part B is the proper schedule to use when calculating reimbursement payments for MRI services under Florida's No–Fault Statute. (Facts ¶ 10; Fla. Stat. § 627.736(5)(a)(2)(f).) The federal statute establishing the participating physicians schedule is 42 U.S.C. § 1395w–4. Subsection (b)(1) of that statute instructs the Secretary of the Department of Health and Human Services to establish the fee schedule based on a variety of factors.[2]  42 U.S.C. § 1395w(b)(1). Subsection (b)(4), however, establishes a "special rule for imaging services." 42 U.S.C. § 1395w(b)(4). This subsection was added pursuant to Congress's Deficit Reduction Act of 2005 ("DRA"), and it requires the Centers of Medicare & Medicaid Services ("CMS")[3] to cap Medicare reimbursement of the technical component of MRI services (i.e., the process of taking the image) in certain instances.[4] (Facts 14.) Specifically, if the technical component of the MRI service exceeds Medicare's Outpatient Prospective System ("OPPS") fee schedule amount for the service, then CMS "shall substitute" the OPPS fee schedule amount.[5] 42 U.S.C. § 1395w–4(b)(4)(A). In other words, Congress has instructed CMS to calculate the fee amounts for the technical service component of MRI services under both OPPS and the participating physicians schedule, and pay the lesser amount.

## C.  Plaintiff's Claim

On March 6, 2009, the Clinic performed an MRI on a State Farm insured and billed State Farm for reimbursement in the amount of $1,811.96. (Facts ¶ 18.) State Farm reimbursed the Clinic in the amount of $805.38. (Id. ¶ 19.) State Farm based its reimbursement determination on the OPPS reduction, noting that "the payment amount for the technical portion has been capped at the . . . [OPPS] amount." (Id. ¶ 20.)

2.  The United States Department of Health and Human Services, Centers of Medicare and Medicaid Services ("CMS") is the federal agency in charge of administering the Medicare program. Pursuant to 42 U.S.C. § 1395w–4(b)(1), CMS annually updates and approves the physicians schedule. The pricing amounts for any particular year, service, location, etc. may be found at the CMS website: www.cms.hhs.gov/PFSlookup/

3.  *See* note 2 supra.

4.  Only the technical component of the MRI is subject to the cap; the professional component (i.e., the reading of the image) is not capped. (Facts ¶ 17.)

5.  The OPPS fee schedule is a separate schedule from the participating physicians schedule and is established pursuant to 42 U.S.C. § 1395*l* (t).

The Clinic claims that State Farm improperly applied the OPPS adjustment and that State Farm should have reimbursed an additional $279.22, for a total reimbursement amount of $1,084.60, which is 200% of the Medicare Part B Non–Facility reimbursement amount. (*Id.* ¶ 21.) The parties agree that $279.22 is the amount in dispute with respect to the Clinic's individual claim. (*Id.*)

### LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997);

*Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

■ If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envtl. Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[6] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

---

**6.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

## ANALYSIS

This case raises an issue of statutory construction that can be decided as a matter of law. The sole issue for determination is whether State Farm's decision to reimburse the Clinic in the amount of the OPPS cap was proper under Florida's No–Fault Statute, § 627.736.

State Farm contends that the statutory phrase "allowable amount under the participating physicians schedule of Medicare Part B" in subsection (5)(2)(f) of Florida's No–Fault Statute refers to the actual amount allowed by Medicare under the published fee schedule, and the OPPS adjustment is expressly incorporated into the "allowable amount" under the No–Fault Statute because 42 U.S.C. § 1395w–4(b)(4)(A) requires that the OPPS amount be substituted for the participating physicians amount when it is less. The Clinic, meanwhile, argues that the "allowable amount" is simply the participating physicians schedule in Medicare Part B, that the OPPS cap cannot be considered as it is not referenced in Florida's No–Fault Statute, and that the OPPS cap is a separate creature of federal law that is relevant only to a limited subset of providers of hospital outpatient services. For the reasons more fully set forth below, the Court largely agrees with the Clinic's interpretation.

■■ Florida applies the plain meaning rule. Where the language of a statute is clear and unambiguous, there is no room for interpretation. *See State v. Dugan*, 685 So.2d 1210, 1212 (Fla.1996) ("When interpreting a statute, courts must determine legislative intent from the plain meaning of the statute."); *St. Petersburg Bank & Trust Co. v. Hamm*, 414 So.2d 1071, 1073 (Fla.1982) ("The plain meaning of the statutory language is the first consideration."). As the Florida Supreme Court declared in construing Florida's No–Fault Law, "Where the wording of the [No–Fault] Law is clear and amenable to a logical and reasonable interpretation, a court is without power to diverge from the intent of the Legislature as expressed in the plain language...." *Allstate Ins. Co. v. Holy Cross Hosp., Inc.*, 961 So.2d 328, 334 (Fla.2007) (citation and quotation omitted).

Applying the plain meaning rule in this case, the Court finds that Florida's No–Fault Statute does not permit State Farm to rely on the OPPS cap because the statute unambiguously refers to, and only to, Medicare Part B's participating physicians schedule. The OPPS schedule is an entirely separate component of the Medicare B program from the participating physicians schedule. *See, e.g., Amgen, Inc. v. Smith*, 357 F.3d 103, 106 (D.C.Cir.2004) (explaining the interplay between OPPS and Medicare Part B).[7] As one Florida court similarly held in a PIP case involving MRI reimbursements, "OPPS is a different fee schedule, with different calculations that generates different amounts than the Participating Physicians Fee Schedule." *AFO Imaging, Inc. v. Alpha Prop. & Cas. Ins. Co.*, No. 08–21490 (Fla. 13th Cir.Ct. Apr. 13, 2009) (finding that the OPPS cap did not apply under Florida's No–Fault Statute). The plain meaning rule compels the Court to interpret the Florida No–Fault Statute as only incorporating the schedule specifically identified in the stat-

---

7. OPPS was designed to control Medicare costs in the hospital setting by providing a prospective fee schedule for hospital reimbursements. *See id.; see also* GAO, *Medicare: Trends in Fees, Utilization, and Expenditures for Imaging Services Before and After the Deficit Reduction Act of 2005*, at 2 n. 5 (explaining that Medicare pays for imaging services under different payment systems: OPPS for imaging services provided in a hospital setting, and the participating physicians schedule for imaging services provided in a doctor's office) (D.E. 22–1).

ute, and not some entirely separate schedule.

State Farm tacitly acknowledges that the OPPS schedule was created independently of the participating physicians schedule originally for the purpose of controlling hospital reimbursements, but argues that this is irrelevant. State Farm points to the fact that, under the Medicare statute, CMS is now required to calculate payment for a MRI's technical component under the participating physicians schedule and under the OPPS schedule, and then "substitute" the OPPS fee schedule amount if it is less. 42 U.S.C. § 1395w–4(b)(4). (*See* State Farm's Reply at 3.) Thus, its argument goes, Congress directed that the OPPS fee schedule *become* part of the participating physicians schedule where it yields a lower value for the technical component of MRI services.

■ This argument is unavailing, however, because it conflates the participating physicians *schedule* with the *statute* that establishes the participating physicians schedule, 42 U.S.C. § 1395w–4. Importantly, Florida's No–Fault Statute does not reference 42 U.S.C. § 1395w–4, or the Deficit Reduction Act, or any other "substitution" language. And Florida's No–Fault Statute does not limit reimbursements to what is "allowable" under the Medicare statute generally. Instead, the Florida statute refers only to the participating physicians *schedule* and limits reimbursement to "the allowable amount *under the participating physicians schedule* of Medicare Part B." Fla. Stat. § 627.736(5)(a)(2)(f) (emphasis added). If

the Court were to accept State Farm's interpretation, then it would essentially rewrite Florida's No–Fault Statute to require PIP insurers to perform the same calculation that Congress requires CMS to conduct under 42 U.S.C. § 1395w–5(b)(4)–that is, calculate the OPPS fee amount for technical services and the participating physicians amount for technical services and pay whichever is less.[8] But this requirement is glaringly absent from Florida's No–Fault Statute, and this Court cannot "rewrite a statute or ignore the words chosen by the Legislature to expand its terms."[9] *Knowles v. Beverly Enters.-Fla., Inc.*, 898 So.2d 1, 7 (Fla.2004). Accordingly, the Court finds the plain meaning of the statute requires that PIP insurers reimburse for MRI services according to the participating physicians schedule and not according to any other schedule or calculation that may be required under the federal Medicare statute.

The Court's conclusion here is consistent with other Florida state courts' interpretation of the No–Fault Statute. In *AFO Imaging, Inc. v. Alpha Prop. & Cas. Ins. Co.*, No. 08–21490 (Fla.Cir.Ct. Apr. 13, 2009), the court acknowledged the well-settled rule that when the legislature "includes one thing but omits another, it does so knowingly and intentionally" and found that the plain reading of the No–Fault Statute requires that MRI reimbursements be made only with reference to the participating physicians schedule because the Florida Legislature excluded any reference to any prospective payments systems, such as OPPS. In *Advanced Diag-*

---

**8.** In other words, under State Farms's interpretation, the Court would have to read out the clause "under the participating physicians schedule" from subsection (5)(a)(2)(f) of the No–Fault Statute.

**9.** Indeed, the Florida Legislature chose to include prospective payment systems, like

OPPS, as the schedule for maximum charges elsewhere in subsection (5)(a)(2). *See* Fla. Stat. § 627.736(5)(a)(2)(d) (providing that the schedule for maximum charges for certain inpatient services is "200 percent of the Medicare Part A *prospective* payment applicable to the specific hospital providing outpatient services." (emphasis added)).

*nostic Testing, Inc. v. Allstate Insurance Co.*, 2003 WL 23868672 (Fla.Cir.Ct. Oct. 1, 2003), *aff'd*, 888 So.2d 663 (Fla. 3d DCA 2004), the court determined that a PIP insured was not responsible for paying the same "limiting charge" [10] under an earlier version of subsection (5)(b) of Florida's No–Fault Statute [11] that a Medicare insured would have to pay for MRI services under the Medicare statute. The court arrived at this conclusion based in part on the fact that the "limiting charge"—although part of the Medicare statute—was not at all referenced in Florida's No–Fault Statute. *Advanced Diagnostic*, 2003 WL 23868672 at *6. Similarly, this Court will not assume that the Florida Legislature intended to incorporate all of the Medicare statute (including the special rule for MRIs) where it chose to specifically reference only the participating physicians schedule.[12]

Additionally, the Court rejects State Farm's argument that the statutory phrase "allowable amount under the participating physician schedule of Medicare Part B" in Florida's No–Fault Statute should be interpreted to mean the amount actually allowed by Medicare. To interpret the statute this way would render the language *"under the participating physicians fee schedule"* superfluous. *See Mil-*

*lennium Diagnostic Imaging Ctr., Inc. v. Sec. Nat'l Ins. Co.*, 882 So.2d 1027, 1029–30 (Fla. 3d DCA 2004) (finding that the amendment to the Florida No–Fault Statute, which added "participating physician fee schedule," clarified the term "allowable amount"). As one court noted, "The Florida Legislature specifically employed the definite article '*the* allowable amount' rather than '*a*' or '*any*' allowable amount. The most sensible reading of the phrase 'the allowable amount' suggests that the [L]egislature intended for a specific Medicare schedule to be incorporated into the PIP statute, rather than either, any, or all of the schedules." *Advanced Diagnostic*, 2003 WL 23868672 at *9 (interpreting the 2001 version of the Fla. Stat § 627.736(5)(b)).

In sum, the Court finds that Florida's No–Fault statute unambiguously identifies the participating physicians schedule as the appropriate schedule for determining MRI reimbursements and State Farm's reliance on the OPPS schedule is inappropriate under the state statute.

### *CONCLUSION*

ORDERED AND ADJUDGED that Defendant's Motion is DENIED and Plaintiff's Motion is GRANTED. It is further

---

**10.** The "limiting charge" is a surcharge borne by a Medicare patient who opts to use the services of a non-participating providers who then submits the claim on an unassigned basis. *Advanced Diagnostic*, 2003 WL 23868672 at *5–6.

**11.** The 2001 version of Fla. Stat. § 627.736(5)(b) provided in pertinent part that "[i]maging services shall not exceed 200% of the allowable amount under Medicare Part B for the year 2001, for the area in which treatment was rendered."

**12.** The Court has considered but is unpersuaded by State Farm's supplemental authori-

ty, *Bravo v. State Farm Fire & Casualty Co.*, No.2009–SC–235 (Fla. Orange County Ct. Jan. 19, 2010). (D.E. 47–1.). There the court offers scant analysis and no explanation as to why the words "allowable amount" incorporates *all* of the Medicare statute. Further, the Court considered the case referenced in *Bravo, MRI Services, I, LLC v. Mercury Insurance Co. of Florida*, 17 Fla. L. Weekly, 46a (Fla. Broward County Ct. Nov. 4, 2009), but similarly finds it unpersuasive because it looks to the Medicare statute (42 U.S.C. § 1395w–4) when the No–Fault Statute simply references the participating physicians schedule—not the entire Medicare statute.

ORDERED AND ADJUDGED that Plaintiff's Motion for Hearing (D.E. 31) is DENIED AS MOOT.