KHOUZAM, Judge.
 

 The Appellants, the Insurance Companies, challenge a final judgment entered against them in a consolidated class action brought by AFO Imaging, Inc., as assignee and on behalf of other similarly situated health care providers that performed magnetic resonance imaging (“MRI”) services (the “MRI providers”) for personal injury protection (“PIP”) benefits to their insureds in the State of Florida. The final judgment awarded money damages for amounts found to have been underpaid to the MRI Providers by the Insurance Companies for PIP benefits for MRI services. We affirm.
 

 The final judgment, which was entered on competing motions for summary judgment, rests upon a declaration of the parties’ respective rights and obligations under section 627.736, Florida Statutes (2008), in regard to PIP benefits.
 
 [1]
 
 The Insurance Companies had argued that they were entitled to pay for nonemergen-cy, nonhospital MRI services provided to PIP insureds based on Medicare’s Hospital Outpatient Prospective Payment System (“OPPS”) (sometimes referred to as the OPD fee schedule amount). They contended that the OPPS amount was part of the participating physicians schedule of Medicare Part B and served as a limitation on the amounts recoverable for MRI services under Florida law. The trial court rejected their argument and properly determined that subsections 627.736(5)(a)(2)(f), (5)(a)(3), and (5)(a)(4) did not authorize a PIP insurer to utilize any restrictions or limitations applicable to the Medicare program when determining the amounts due for MRI services provided in a nonemergency, nonhospital setting for PIP insureds in the State of Florida.
 

 
 *136
 
 The versions of the Florida Motor Vehicle No-Fault Law
 
 [2]
 
 applicable to these consolidated class actions set forth the methodology by which a PIP insurer was allowed to limit reimbursement for certain covered medical services, supplies, and care provided to a PIP insured.
 
 See
 
 § 627.736(5)(a), Fla. Stat. (2008).
 
 [3]
 
 It is undisputed that the MRIs here were provided in a nonemergency, nonhospital setting and that subsection (5)(a)(2)(f) thus applied to the determination of the amounts due for these MRI services.
 
 See
 
 § 627.736(5)(a)(2)(f). Subsections (5)(a)(3) and (5)(a)(4)
 
 [4]
 
 were also implicated in making the determination of the amounts due for these MRI services.
 
 See
 
 § 627.736(5)(a)(3)-(4). Of these, subsections (5)(a)(2)(f) and (5)(a)(3) are critical to our decision in this appeal.
 

 The version of subsections (5)(a)(2)(f) and (5)(a)(3) in effect from January 1, 2008, through June 30, 2008, provided as follows:
 

 2. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
 

 [[Image here]]
 

 f. For all other medical services, supplies, and care, 200 percent of the applicable Medicare Part B fee schedule. However, if such services, supplies, or care are not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers’ compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care are provided. Services, supplies, or care that are not reimbursable under Medicare or workers’ compensation are not required to be reimbursed by the insurer.
 

 3. For purposes of subparagraph 2., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care were rendered and for the area in which such services were rendered, except that it may not be less than the applicable 2007 Medicare Part B fee schedule for medical services, supplies, and care subject to Medicare Part B.
 

 § 627.736(5)(a)(2)(f), (5)(a)(3) (emphasis supplied). These subsections were amended effective July 1, 2008, to read:
 

 2. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
 

 [[Image here]]
 

 f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers’ compensation, as determined under s. 440.13 and rales adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or
 
 *137
 
 workers’ compensation is not required to be reimbursed by the insurer.
 

 3. For purposes of subparagraph 2., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule
 
 [1]
 
 of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.
 

 [[Image here]]
 

 § 627.736(5)(a)(2)(f), (5)(a)(3) (emphasis supplied).
 

 As reflected above, subsections (5)(a)(2)(f) and (5)(a)(3), as amended by the Florida Legislature in 2008, expressly designated “the participating physicians schedule of Medicare Part B”
 
 [5]
 
 as the operative fee schedule to be utilized in computing the minimum amount the Insurance Companies were statutorily allowed to remit for the type of medical services, supplies, and care provided to the PIP insureds by the MRI Providers.
 

 The computations relied upon by the Insurance Companies, however, had capped the payments due for the MRI services based on OPPS, which required the use of an additional, limiting schedule in determining allowable Medicare payments under Medicare Part B. This additional schedule, under federal law, was to be utilized in calculating authorized Medicare payments for the technical component of certain imaging services- — -it acted as a limitation on the amounts that federal law would allow for certain services provided to Medicare recipients.
 
 See All Family Clinic of Daytona Beach, Inc. v. State Farm Mut. Auto. Ins. Co.,
 
 685 F.Supp.2d 1297, 1299 (S.D.Fla.2010).
 

 The Insurance Companies asserted, and continue to argue, that this additional fee schedule was part of “the participating physicians schedule of Medicare Part B” referred to by the Florida Legislature in subsections (5)(a)(2)(f) and (5)(a)(3). They argue that the statutory phrase “the allowable amount,” which immediately preceded the phrase “participating physicians schedule of Medicare Part B,” should be interpreted to mean the amount that actually would have been allowed under the Medicare program.
 

 We reject their argument. Subsections (5)(a)(2)(f) and (5)(a)(3) unambiguously refer to the participating physicians schedule of Medicare Part B as the schedule upon which to rely. The OPD fee schedule amount payable by Medicare under OPPS is a distinct and separate component of Medicare Part B. As recently stated by the federal district court in
 
 All Family Clinic,
 
 “[t]he OPPS schedule is an entirely separate component of the Medicare B program from the participating physicians schedule.” 685 F.Supp.2d at 1301 (citing
 
 Amgen, Inc. v. Smith,
 
 357 F.3d 103, 106 (D.C.Cir.2004), as a general reference to explain the interplay between OPPS and Medicare Part B). The inclusion of the phrase “the allowable amount” in subsections (5)(a)(2)(f) and (5)(a)(3) does not alter the plain meaning of these subsections
 
 *138
 
 when that phrase is read in context with the remainder of these PIP provisions. This court would have to ignore the phrase “under the participating physicians schedule,” in order to read these subsections in the manner suggested by the Insurance Companies.
 

 Inasmuch as subsections (5)(a)(2)(f) and (5)(a)(3) unambiguously referred to, and only to, Medicare Part B’s participating physicians schedule, the minimum amount due for the MRI services provided in a nonemergency, nonhospital setting to the Insurance Companies’ PIP insureds covered under Florida law could not have been capped by the OPD fee schedule amount payable by Medicare under OPPS. Accordingly, we affirm.
 

 Affirmed.
 

 WHATLEY and DAVIS, JJ„ Concur.
 

 [1]
 

 . The declaration pertained to PIP benefits allowable under the statutory provisions in effect beginning January 1, 2008. This opinion is limited to the statutory provisions in effect for 2008.
 

 [2]
 

 . "Sections 627.730-627.7405 may be cited and known as the 'Florida Motor Vehicle No-Fault Law.' ” § 627.730, Fla. Stat. (2008).
 

 [3]
 

 . As further explained in this opinion, the version of section 627.736(5)(a), Florida Statutes (2008), in effect from January 1, 2008, through June 30, 2008, was amended in 2008 effective July 1, 2008.
 

 [4]
 

 .Numerous arguments have been presented with respect to subsection (5)(a)(4), but they are not critical to the disposition of this appeal.
 

 [1]
 

 Note. — The word "of” was inserted by the editors.
 

 [5]
 

 . The parties' disputes center upon the latter version of the 2008 statute, which referred to "the participating physicians schedule of Medicare Part B” and "the participating physicians schedule of Medicare Part B for 2007,” rather than the earlier version of the 2008 statute, which referred to "the applicable Medicare Part B fee schedule” and "the applicable 2007 Medicare Part B fee schedule.”