JACOBUS, J.
This appeal arises from two unrelated personal injury protection (PIP) lawsuits that involved identical legal issues and were consolidated for trial. SOCC, d/b/a South Orange Wellness and Injury Center, is a medical provider, which provided treatment to Michelle Badillo and Carmen Garcia for injuries they sustained in separate automobile accidents. Both Badillo and Garcia assigned SOCC their rights *905 and benefits under their State Farm PIP insurance policies. SOCC billed State Farm for services rendered to Badillo and Garcia, but State Farm only paid SOCC for a portion of the services SOCC claimed it provided.
SOCC filed suit against. State Farm in both cases in county court to recover the amount it claimed it was owed for the services rendered to Garcia and Badillo. The lower court entered summary judgment in favor of State Farm, finding that SOCC improperly “unbundled” medical services when submitting its bills to State Farm. As a result, the court concluded that neither State Farm nor the patients were required to pay SOCC for the unbundled amount. State Farm based its un-bundling claim on the National Correct Coding Initiative (NCCI), which is a program developed by the Centers for Medicare and Medicaid Services (CMS)[1] to promote national correct coding methodologies and to control improper coding that leads to inappropriate payment of Medicare Part B claims. It -is State Farm’s position that the NCCI edits are incorporated into the Florida No-Fault Statute and, therefore, can be used to limit the payment to medical providers such as SOCC. The county court certified a question of great public importance to this court. The certified question restated is as follows:
ARE THE NATIONAL CORRECT CODING INITIATIVE COMPREHENSIVE EDITS DATABASE (NCCI EDITS) INCORPORATED INTO THE FLORIDA NO-FAULT (PIP) STATUTES.
We answer the question in the negative.
There is no question in this case that SOCC provided the services to Badillo and Garcia. Essentially, both Badillo and Garcia received two different treatments from SOCC on the same day. They were properly coded and sent to State Farm for payment. State Farm only paid for one treatment as set forth in the NCCI edits because it believed that under the NCCI edits, the Medicare Rules do not allow the billing of both treatments on the same day. Thus, the pertinent issue is whether the NCCI edits are incorporated into the Florida No-Fault Statute. If so, State Farm properly refused to pay for more than one treatment as set forth in the NCCI edits. If, however, the NCCI edits are not incorporated into the Florida No-Fault Statute, SOCC was owed for the treatments Badillo and Garcia received, even though the Medicare Rules would not allow payment for those services rendered on the same day.
Section 627.736, Florida Statutes,[2] controls the outcome of this case. It reads in relevant part:
(5) Charges for treatment of injured persons.—
(a) 1. Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured *906 person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered.... In no event, however, may such a charge be in excess of the amount the person or institution customarily charges for like services or supplies.
[[Image here]]
2.The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
a. For emergency transport and treatment by providers licensed under chapter 401, 200 percent of Medicare.
b. For emergency services and care provided by a hospital licensed under chapter 395, 75 percent of the hospital’s usual and customary charges.
c. For emergency services and care as defined by s. 395.002(9) provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.
e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.
f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers’ compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers’ compensation is not required to be reimbursed by the insurer.
3. For purposes of subparagraph 2., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.
4. Subparagraph 2. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers’ compensation. An insurer that applies the allowable payment limitations of subparagraph 2. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider would be entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers *907 who may be reimbursed for particular procedures or procedure codes.
§ 627.736, Fla. Stat. (emphasis supplied).
It is SOCC’s position that the court must interpret the statute as only adopting the participating physicians schedule and not adopting all of the Medicare Rules and Regulations. State Farm, on the other hand, argues that the Florida Legislature adopted the Medicare Payment System in enacting the Florida No-Fault Statute because it refers to various fee schedules set forth in Medicare. Therefore, it concludes the Florida No-Fault Statute adopts the Medicare pay system and, because Medicare has adopted the NCCI edits, the edits were likewise adopted by the Florida No-Fault Statute.
“[Ljegislative intent is the polestar that guides a court’s inquiry under the No-Fault Law.” Allstate Ins. Co. v. Holy Cross Hosp., Inc., 961 So.2d 328, 334 (Fla.2007). The legislative “intent is derived primarily from the language of the statute.” Id. “[W]hen the language of a statute is clear and unambiguous,” a court may not resort to the rules of statutory construction. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). Rather, “the statute must be given its plain and obvious meaning.” Id. (quoting McRainey, 137 So. at 159). A statute is ambiguous if reasonable people “can find different meanings in the same language.” Rollins v. Pizzarelli, 761 So.2d 294, 297 (Fla.2000) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist, 604 So.2d 452, 455 (Fla.1992)).
A Florida circuit court recently considered the NCCI edits in relation to the Florida No-Fault Statute. See DWFII Corp. v. State Farm, & Cas. Co., 17 Fla. L. Weekly Supp. 1235a (Fla. 11th Cir.Ct. July 28, 2010). In that case, the court concluded that the Florida No-Fault Statute only incorporates the participating physicians schedule of Medicare because it is specifically indentified in the statute. The court explained its reasoning as follows:
In 2008, the Florida Legislature amended subsection (5)(a)(2)(f) and (5)(a)(3) of section 627.736 to allow insurers to limit Personal Injury Protection (PIP) reimbursement to 80% of 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. The statute further allows the insurer to limit non-reimbursable charges under Medicare Part B to 80% of the “maximum reimbursable allowance under workers’ compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided.”
“In January of 1996, the Centers for Medicare & Medicaid Services (CMS) implemented the National Correct Coding Initiative (CCI). This initiative was developed to promote correct coding of health care services by providers and to prevent Medicare payment for improperly coded services. NCCI consists of automatic edits provided to the carriers to evaluate claim submissions when a provider bills more than one service for the same beneficiary on the same date of service.” The CMS is also the federal agency in charge of administering the Medicare program, and it updates and approves the physicians schedule annually. The NCCI is a separate schedule from the participating physicians schedule, and the fact that Medicare employs the NCCI to bar payments for services provided on the same day, does not, in absence of statutory language to the contrary, lead to the conclusion that a private insurer may limit a claim based upon the NCCI.
*908 Any limitations permitted under Florida’s PIP statute are expressly contained therein, specifically in section 627.736(5)(a)2.(a)-(f) and 3.-5. The statute permits limiting reimbursement to participating physicians schedule of Medicare Part B. Nowhere in the amended PIP statute does the legislature permit the use of any other schedule, government or otherwise, which Medicare considers in further limiting its claims. The claims at issue under section 627.736, Florida Statutes, are not Medicare claims part of a government run program. Rather, they are the result of private insurance. The administering of Medicare and its handling of claims may not be superimposed on Florida’s No-Fault law, in absence of statutory language to that effect. And, the Legislature has specifically written this principle into the statute.
In section 627.736(5)(a)(4) the Legislature recognizes that Medicare uses a variety of guides to limit payments and forbids their application in PIP cases[.]
[[Image here]]
In essence, PIP claims are not to be adjusted as if they were Medicare claims. To hold otherwise would be to render the language “under the participating physicians fee schedule” superfluous. “As one court noted, ‘The Florida Legislature specifically employed the definite article ‘the allowable amount’ rather than ‘a’ or ‘an/ allowable amount. The most sensible reading of the phrase ‘the allowable amount’ suggests that the [Legislature intended for a specific Medicare schedule to be incorporated into the PIP statute, rather than either, any, or all of the schedules.’ Consequently, while an insurer may limit reimbursement to 80% of 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B, no other sources of limitations are permissible under Florida’s No Fault law.
Id. (emphasis supplied) (internal citations omitted). Other circuit courts have addressed this issue and have found the NCCI edits are incorporated in the Florida No-Fault Statute. See Space Coast Corporate Health Seros, v. State Farm Mut. Auto. Ins. Co., 17 Fla. L. Weekly Supp. 1269a (Fla. 18th Cir.Ct. July 9, 2010) (entering summary judgment in State Farm’s favor because legislature adopted Medicare pay system in the Florida No-Fault Statute); Alexandra Healthcare, LLC v. State Farm Mut. Auto. Ins. Co., 17 Fla. L. Weekly Supp. 826a (Fla. 9th Cir.Ct. May 6, 2010) (finding all Medicare guidelines, except for two sections that were excepted out by legislature, apply to section 627.736(5)(a)4.).
Although not directly on point, a recent case from the second district, which considered the Florida No-Fault Statute and a system used by Medicare to limit MRI services, is instructive in this matter. In Nationwide Mutual Fire Insurance Co. v. AFO Imaging, Inc., 71 So.3d 134 (Fla. 2d DCA 2011), the court considered a final judgment entered in favor of MRI providers, who claimed they were underpaid by insurance companies for PIP benefits. Id. at 135. At trial, the insurance companies argued “they were entitled to pay for non-emergency, nonhospital MRI services provided to PIP insureds based on Medicare’s Hospital Outpatient Prospective Payment System (“OPPS”).” Id. They further argued that the OPPS amount was part of the participating physicians schedule of Medicare Part B and limited the amounts the medical provider could recover for MRI services under the Florida No-Fault Statute. Id.
*909 The trial court and the appellate court each rejected this argument, concluding that “subsections 627.736(5)(a)(2)(f), (5)(a)(3), and (5)(a)(4) did not authorize a PIP insurer to utilize any restrictions or limitations applicable to the Medicare program when determining the amounts due for MRI services” under the circumstances of the case. Id. The second district explained that subsections (5)(a)(2)(f) and (5)(a)(3) expressly designated “the participating physicians schedule of Medicare Part B” as the fee schedule to be used in calculating the minimum amount of money insurance companies were statutorily required to pay for the type of medical services provided. Id. at 137. The court further found as follows:
Subsections (5)(a)(2)(f) and (5)(a)(3) unambiguously refer to the participating physicians schedule of Medicare Part B as the schedule upon which to rely. The OPD fee schedule amount payable by Medicare under OPPS is a distinct and separate component of Medicare Part B. As recently stated by the federal district court in All Family Clinic, “[t]he OPPS schedule is an entirely separate component of the Medicare B program from the participating physicians schedule.” The inclusion of the phrase “the allowable amount” in subsections (5)(a)(2)(f) and (5)(a)(3) does not alter the plain meaning of these subsections when that phrase is read in context with the remainder of these PIP provisions. This court would have to ignore the phrase “under the participating physicians schedule,” in order to read these subsections in the manner suggested by the Insurance Companies.
Inasmuch as subsections (5)(a)(2)(f) and (5)(a)(3) unambiguously referred to, and only to, Medicare Part B’s participating physicians schedule, the minimum amount due for the MRI services provided in a nonemergency, nonhospital setting to the Insurance Companies’ PIP insureds covered under Florida law could not have been capped by the OPD fee schedule amount payable by Medicare under OPPS.
Id. at 137-38 (internal citations omitted).
The reasoning in AFO Imaging- suggests the NCCI edits are not part of Florida’s No-Fault Statute. The Legislature only incorporated the “participating physicians schedule of Medicare Part B” in the statute. The fact that the Legislature specifically referred to a portion of Medicare Part B but did not mention the NCCI edits or any other part of the Medicare system suggests that it intended only to incorporate the participating physicians fee schedule of Medicare in the Florida No-Fault Statute and not the entire Medicare statute as State Farm claims. See All Family Clinic of Daytona Beach Inc. v. State Farm Mut. Auto. Ins. Co., 685 F.Supp.2d 1297, 1303 (S.D.Fla.2010) (refusing to assume Florida’s Legislature intended to incorporate all of the Medicare statute into section 627.736 where it chose to specifically reference only the participating physicians schedule); see also Young v. Progressive Se. Ins. Co., 753 So.2d 80, 85 (Fla.2000) (failing to include self-insured motorist policy exclusions in list of authorized exclusions set forth in statute indicated legislative intent to not permit self-insured motorist policy exclusions).
The language of section 627.736(5)(a)4. further supports a finding that the Legislature did not intend for the NCCI edits or other limitations imposed in Medicare cases to be imposed under PIP. That provision states that:
4. Subparagraph 2. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or *910 workers’ compensation. An insurer that applies the allowable payment limitations of subparagraph 2. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider would be entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes.
§ 627.736(5)(a)4., Fla. Stat. Contrary to State Farm’s claims, this language does not support a finding that the Legislature intended to incorporate all of Medicare into the PIP statute except those portions set forth in subsection (5)(a)4. Instead, the plain language of subsection (5)(a)4. states that, under PIP, an insurer may not apply any limitation on the number of treatments or utilization limits that would apply under Medicare. This language clearly prohibits an insurance company from treating PIP claims as if they were Medicare claims.
For the previously stated reasons, the Legislature did not intend to incorporate the NCCI edits into the Florida No-Fault Statute. As such, it was error for the county court to find otherwise and to enter final summary judgment in State Farm’s favor. See All Family Clinic, 685 F.Supp.2d 1297; Nationwide Mut. Fire Ins., 71 So.3d 134; ISOT Med. Ctr., Corp. v. State Farm Mut. Auto Ins. Co., 17 Fla. L. Weekly Supp. 1245a (Fla. 11th Cir.Ct. Aug. 6, 2010); DWFII Corp., 17 Fla. L. Weekly Supp. 1235a.
State Farm argues alternatively that the Florida No-Fault Statute incorporates the NCCI edits through its reference to the Office of the Inspector General (OIG) in section 627.736(5)(d), Florida Statutes. That section instructs an interested party to refer to the OIG, among other authorities, for guidance in determining if a provider has properly submitted the bill to a PIP insurer. State Farm reasons that because the OIG has adopted and endorsed the NCCI edits in its published guidelines, the reference to OIG incorporates the NCCI edits into the Florida No-Fault Statute. We find this argument without merit.
We find that the Legislature’s reference to the OIG does not incorporate the NCCI edits into the Florida No-Fault Statute. Since we have determined that the NCCI edits are not a part of the Florida No-Fault Statute, the other issues raised on appeal are moot. Summary judgment entered in favor of State Farm is reversed and the case is remanded to the trial court to enter a judgment in favor of SOCC.
REVERSED and REMANDED.
PALMER and TORPY, JJ., concur.

. CMS is a branch of the United States Department of Health and Human Services, which administers Medicare, Medicaid and the Children's Health Insurance Program. https://questions.cms.hhs.go v/app/an - swers/detail/aid/l/7what-is-cms?.

. The parties disagree about which version of the Florida No-Fault Statute applies to this case. State Farm argues the statute that came into effect July 1, 2008, is applicable here. SOCC claims that the prior statute applies because the contract of insurance between State Farm and its insured was entered into before July 1, 2008. The issues in this case are not related to the contractual language of the policy but rather whether proper payment was made to SOCC pursuant to the statute. Because the claim was denied after July 1, 2008, the 2008 version of the statute applies here.