DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PROGRESSIVE SELECT INSURANCE COMPANY,**
Appellant,

v.

**DR. RAHAT FADERANI, DO, MPH, P.A.,**
a/a/o **ROBERSON PIERRE,**
Appellee.

No. 4D21-232

[November 10, 2021]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Kathleen McCarthy, Judge; L.T. Case Nos. COCE 19-1076 (51) and CACE 20-17509 (AP).

Michael C. Clarke of Kubicki Draper, P.A., Tampa, for appellant.

Kevin R. Jackson of the Law Offices of Kevin Jackson, P.A., Fort Lauderdale, for appellee.

WARNER, J.

Progressive Insurance Company appeals a final summary judgment finding that it had adjusted bills for PIP[1] claims improperly, resulting in the underpayment of appellee, Dr. Faderani.  The trial court also denied Progressive's motion for summary judgment. Progressive had reduced appellee's bills by using the National Correct Coding Initiative edits (NCCI), a national initiative to promote correct coding of health care services implemented by the Center for Medicaid and Medicare.  Appellee contended that such reduction was in bad faith based upon *SOCC, P.L. v. State Farm Mutual Automobile Insurance Co.*, 95 So. 3d 903 (Fla. 5th DCA 2012), which held that the edits were not permitted under a prior version of section 627.736(5)(a)3., Florida Statutes.  The statute was amended after *SOCC* to allow insurance companies to use "Medicare coding policies and payment methodologies" in its reimbursement decisions, so long as those policies and modifications "do[] not constitute a utilization limit."

---

[1] PIP stands for personal injury protection benefits contained in automobile insurance policies.  *See* § 627.736, Fla. Stat.

Because the use of Medicare coding policies was authorized by the amended statute, and Progressive had exhausted the PIP benefits prior to the filing of this suit, the trial court erred in granting summary judgment to appellee and denying Progressive's motion for summary judgment. We reverse.

Progressive's insured was injured in an auto accident. Insured's policy included $10,000 in PIP benefits subject to a $1,000 deductible. Insured was treated and seen by multiple providers. Prior to seeking treatment from appellee, insured obtained treatment from United Health and Rehab Center, which submitted two claims to Progressive. Progressive adjusted those claims, reducing payment based upon NCCI edits, explaining that according to "the National Correct Coding Edits [NCCI], this procedure code is not separately reimbursable with this chiropractic manipulative treatment code (98940-98942) with modifier exceptions." This resulted in a reduced calculation of the amount owed to United Health, and that reduced amount was then applied to meet the deductible. Progressive applied appellee's bill to the deductible, resulting in no payment to appellee until appellee sent a pre-suit demand letter. Progressive paid an additional amount in response to the demand letter, and then Progressive exhausted its PIP coverage through payment to other providers.

After benefits were exhausted, appellee sued Progressive for breach of contract based on an assignment of benefits and provider's lien from Progressive's insured. Appellee alleged that Progressive "improperly reduced some of [insured's] bills before applying them to the subject policy's deductible, resulting in a reduced payment being made to [appellee]." It did not allege that Progressive acted in bad faith. Progressive answered and alleged affirmative defenses including that the PIP benefits were exhausted, estopping appellee from seeking further payment.

Appellee moved for summary judgment, claiming that Progressive had improperly exhausted PIP benefits, and had acted in bad faith by using the NCCI edits to calculate the reimbursable amount on United Health's bill. Progressive had failed to follow *SOCC*, which appellee claimed held that NCCI edits could not be used to adjust a PIP claim, because the edits were utilization limits. If the NCCI edits had not been used, the deductible would have been applied differently, resulting in PIP coverage to reimburse appellee when its bill was presented.

Progressive also filed a motion for summary judgment, claiming it was entitled to judgment based on its exhaustion of the claimant's PIP benefits pre-suit. Progressive had paid out the statutory policy limits of the claimant's PIP benefits. It could not be required to pay in excess of the

claimant's PIP benefits in the absence of bad faith, and there was no basis for a bad faith allegation.

At the hearing on the motions, appellee relied on *SOCC* to claim that Progressive improperly used the NCCI edits. Progressive argued that *SOCC* was not binding, because the statute was amended to allow the use of Medicare coding methodologies. Thus, it could not be liable for bad faith. The court granted appellee's motion and denied Progressive's motion. It then entered final summary judgment for benefits to appellee in the amount of $116.55 plus interest and entitlement to reasonable attorney's fees and costs. After a motion for rehearing was denied, Progressive filed this appeal.

The standard of review of an order granting summary judgment is de novo. *Restoration Constr., LLC v. SafePoint Ins. Co.*, 308 So. 3d 649, 651 (Fla. 4th DCA 2020). The standard of review of interpretation of the Florida No-Fault (PIP) Statute, section 627.736, Florida Statutes, is also de novo. *Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.*, 141 So. 3d 147, 152 (Fla. 2013).

Progressive argues that PIP benefits under the policy were exhausted before appellee filed suit, and it could not be compelled to pay benefits to appellee. In *Northwoods Sports Medicine & Physical Rehabilitation, Inc. v. State Farm Mutual Automobile Insurance Co.*, 137 So. 3d 1049 (Fla. 4th DCA 2014), we held "[o]nce the PIP benefits are exhausted through the payment of valid claims, an insurer has no further liability on unresolved, pending claims, *absent bad faith in the handling of the claim by the insurance company.*" *Id.* at 1057 (emphasis added); *see also GEICO Indem. Co. v. Gables Ins. Recovery, Inc.*, 159 So. 3d 151 (Fla. 3d DCA 2014).

As Progressive notes, appellee did not make a claim of "bad faith" in his Statement of Claim. Progressive alleged as an affirmative defense that the PIP benefits had been exhausted by payments to other providers. Bad faith would be considered an avoidance of Progressive's affirmative defense of exhaustion, but appellee did not file a reply. Instead, appellee points to his allegation that Progressive made "improper payments" in his claim as satisfying the exception to the exhaustion of benefits defense.

Some cases support the appellee's contention that when payments have been improperly made and PIP benefits exhausted prior to payment to the unpaid provider, the unpaid provider may be entitled to relief. In *Coral Imaging Services v. Geico Indemnity Insurance Co.*, 955 So. 2d 11 (Fla. 3d DCA 2006), on second tier certiorari review, the Third District found summary judgment for the plaintiff provider was correct where Geico had

3

improperly paid two other untimely claims submitted by a different provider and exhausted benefits before addressing the plaintiff provider's timely claim. However, the Third District later limited *Coral Imaging* to apply only to the payment of untimely claims. *Gables Ins. Recovery*, 159 So. 3d at 155. And in *Allstate Fire & Casualty Insurance Co. v. Jeffrey L. Katzell, M.D., P.A.*, 323 So. 3d 191 (Fla 4th DCA 2021), we considered a case in a similar posture, albeit on a concession of error by the provider, where the provider sued Allstate for benefits alleging that it had made statutorily improper payments to other providers which exhausted the PIP benefits before the provider's claim. In that case, we ultimately determined that the payments had been properly made. We did not address directly whether improper payments by the insurer, absent an allegation of bad faith in a reply, were sufficient to overcome the exhaustion of benefits defense.

Were we to write on a clean slate, and except for untimely payments,[2] we would hold that an insurance company's "improper" payments to another provider do not constitute bad faith sufficient to overcome the insurance company's exhaustion of benefits defense to a provider who sues for payment after the policy limits have been exhausted. In *Northwoods*, we allowed bad faith "*in the handling of the claim by the insurance company*" to overcome the defense. 137 So. 3d at 1057. We construe that to mean bad faith in the handling of the claim at issue, not a claim by a third party, particularly where there is no evidence that the third party contested how the insurance company handled that party's claim. In other words, the conduct of the insurance company must be directed at the provider attempting to avoid the exhaustion of benefits claim. Nevertheless, because of the foregoing cases, we conclude that we must address whether Progressive overcame the bad faith or improper payments claim of appellee.

We conclude that the court erred in granting summary judgment on the basis that Progressive's use of the NCCI edits were improper and in bad faith. Appellee argued that they were improper based upon *SOCC*. We reject the application of *SOCC* to this case, as it was decided under an

---

[2] Where a provider makes an untimely submission of a bill to the insurer, the insured is not liable for any payment to the provider. *See* § 627.736(5)(c), Fla. Stat. The insured's lack of liability for untimely bills was the reason that the *Coral Imaging* court held that untimely payments to other providers which exhausted benefits would result in an exception to the exhaustion of benefits rule where a timely submitted payment was then not reimbursed. The insured would be liable for any portion of a timely submitted bill.

4

earlier version of section 627.736(5)((a)3., Florida Statutes (2018).[3] In that case, the court answered a certified question from the county court: "Are the National Correct Coding Initiative comprehensive edits database (NCCI edits) incorporated into the Florida No–Fault (PIP) statutes[?]" 95 So. 3d at 905 (emphases omitted). In *SOCC*, a provider contested the insurance company's bundling of services on its bill using NCCI edits. State Farm contended it could bundle the services based upon the Center for Medicare methodologies. After reviewing the statute, the court held that the statute did not incorporate the NCCI edits in its terms, concluding that the statutory language prohibited the insurance company from treating a PIP claim the same as a Medicare claim. *Id.* at 910. The case did not hold that NCCI edits were an improper utilization limit.

Subsequent to *SOCC,* the Legislature amended section 627.736(5)(a)4. in 2012 to include the use of Medicare coding methodologies. The renumbered statute, section 627.736(5)(a)3., applicable here provides:

> Subparagraph 1. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation. An insurer that applies the allowable payment limitations of subparagraph 1. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider is entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes. *However, subparagraph 1. does not prohibit an insurer from using the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care if the coding policy or payment methodology does not constitute a utilization limit.*

§ 627.736(5)(a)3., Fla. Stat. (2018) (emphasis added). Thus, the statute now allows the use of Medicare coding in reimbursement decisions.

We recently considered this statutory language and determined that an insurance company could use the Medicare Multiple Procedure Payment Reduction ("MPPR") coding to limit PIP provider reimbursements as it was

---

[3] *SOCC* was decided based on section 627.736(5)(a)4., Florida Statutes (2008). 95 So. 3d at 905 n.2.

an authorized payment methodology, not an improper utilization limit. *State Farm Mut. Auto. Ins. Co. v. Pan Am Diagnostic Servs., Inc.*, 321 So. 3d 807 (Fla. 4th DCA 2021). We concluded that the MPPR did not limit the number of services a patient may access. It simply limited the reimbursement for them. Quoting from a county court analysis, we noted:

> A determination of a reasonable charge for provider services, however, does not mean, *a fortiori*, that such limitation on reimbursement deprives a patient of necessary treatment or precludes a health care provider from utilizing necessary and reasonable care. If that were the Legislature's purpose in its latest iteration of the PIP Statute, then no coding policies or payment methodology would be permissible.

*Id.* at 810. A utilization limit is patient-oriented, preventing the patient from treatment. It is not provider-directed to expand what codes can be billed for services to the patient.

Other provisions of the PIP statute also allow for coding policies regarding bundling of services. The statute requires that providers use Centers for Medicare and Medicaid Services forms for submitting claims. *See* § 627.736(5)(d), Fla. Stat. (2018). An insurer is not required to pay a claim or charge "[f]or any treatment or service that is upcoded, or that is unbundled when such treatment or services should be bundled, in accordance with paragraph (d)." § 627.736(5)(b)1.e., Fla. Stat. (2018). Thus, the Legislature clearly contemplated that the insurer could consider coding policies involving bundling of services. A review of the NCCI policy manual for Medicare reveals the purpose of the NCCI policies. "The CMS developed the National Correct Coding Initiative (NCCI) program to prevent inappropriate payment of services that should not be reported together." Centers for Medicare & Medicaid Services, U.S. Dep't of Health & Human Services: *NCCI Policy Manual for Medicare, Ch. I-4 General Correct Coding Policies*, (October 2021) ("NCCI Policy Manual"), https://www.cms.gov/files/document/chapter1generalcorrectcodingpoliciesfinal112021.pdf.

The purpose of the NCCI PTP (Procedure to Procedure) edits is to prevent improper payment when incorrect code combinations are reported. The NCCI contains one table of edits for physicians/practitioners and one table of edits for outpatient hospital services. The purpose of the NCCI MUE (Medically Unlikely Edits) program is to prevent improper payments when services are reported with incorrect units of service. Centers for Medicare & Medicaid Services, National Correct Coding Initiative, https://www.cms.gov/Medicare/Coding/PTP-Coding-Edits?redirect. In other words, the NCCI is a coding policy and payment methodology, not a

utilization limit. The edits do not prohibit services to the patient; they simply require that those services be bundled together for payment, where appropriate, when the service is comprehensive involving multiple coded procedures. For example:

> A physician shall not report multiple HCPCS/CPT codes when a single comprehensive HCPCS/CPT code describes these services . . . .
>
> A physician shall not fragment a procedure into component parts . . . .
>
> A physician shall not unbundle a bilateral procedure code into 2 unilateral procedure codes . . . .
>
> A physician shall not unbundle services that are integral to a more comprehensive procedure[.]

NCCI Policy Manual, Chapter I-6–7, https://www.cms.gov/files/document/chapter1generalcorrectcodingpoliciesfinal112021.pdf.

Similarly, section 627.736(5)(b)1.e., Florida Statutes, specifically authorizes an insurance company not to pay for unbundled services. These coding policies are also similar to the MPPR, which we held were not utilization limits in *State Farm Mut. Auto. Ins. Co. v. Stand Up MRI of Boca Raton, P.A.*, 322 So. 3d 87, 89 (Fla. 4th DCA 2021); *accord Progressive Am. Ins. Co. v. Head To Toe Posture Rehab*, LLC, --- So. 3d ----, 2021 WL 4561377 (Fla. 4th DCA October 6, 2021).

Thus, we agree with Progressive that the NCCI edits are not utilization limits. Rather, the edits are Medicare coding policies and payment methodologies allowed by section 627.736(5)(a)3. in the reimbursement of PIP claims. Progressive properly used the edits in determining reimbursement.

Because the use of NCCI edits comports with the statute, Progressive did not make improper payments or act in bad faith in using the edits to reduce the bill of the third-party provider. As it is undisputed that Progressive exhausted insured's PIP benefits by the proper payment of claims prior to this lawsuit, Progressive is not liable for payment in excess of the policy limits. The trial court erred in granting summary judgment for appellee and denying Progressive's motion for summary judgment. We thus reverse and remand for entry of a judgment in favor of Progressive.

*Reversed.*

LEVINE and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***